UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                     :

ANDREW CLARKE, *et al.*,

                                                                                     :

                                 Plaintiffs,                      08 Civ. 02400 (CM) (DF)

                                                                                       :

                  -against-                                              **MEMORANDUM**

                                                                                       :           **AND ORDER**

J.P. MORGAN CHASE & CO.

                                                                                       :

                                     Defendant.
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

       Presently before the Court is an application by defendant J.P. Morgan Chase & Co. ("Defendant") for an order compelling plaintiffs Andrew Clarke, *et al.* ("Plaintiffs") to return or destroy all copies of an e-mail message, dated December 3, 2007, allegedly sent from Defendant's Global Technology Infrastructure Management Team (the "GTI Management Team") to "all those in GTI who manage employees impacted by upcoming FLSA changes." Defendants contend that the e-mail is protected by the attorney-client privilege and the work product doctrine. For the following reasons, Defendant's application is denied.

      A.      **The Parties' Contentions**

       Defendant, which has provided a copy of the e-mail to the Court for *in camera* review, asserts that it was drafted, in part, by Todd Gutfleisch, Esq. ("Gutfleisch"), Defendant's former Assistant General Counsel, to recommend to managers of Defendant's information technology ("IT") department that certain IT job positions be reclassified from "exempt" to "nonexempt" from overtime eligibility under the Fair Labor Standards Act ("FLSA"). (*See* Letter to the Court from Sam S. Shaulson, Esq., dated Mar. 3, 2009 ("Defendant's 3/3/09 Letter"), at 2, and

Ex. A2 thereto.)¹ Defendant argues, first, that the e-mail communicates Gutfleisch's legal advice that the positions should be reclassified. (*Id*.) Second, Defendant argues that, to the extent the e-mail describes the factual basis for Gutfleisch's legal advice (*i.e.,* the nature of the work performed by employees with the job titles in question), it necessarily communicates Gutfleisch's rationale for his legal conclusions, and hence his legal reasoning. (*Id*.) Third, Defendant points out that the e-mail references the fact that a number of Defendant's competitors had been involved in litigation regarding the alleged misclassification of IT positions, thereby suggesting a litigation context for counsel's advice. (*Id*.) Fourth, Defendant argues that the e-mail communicates Gutfleisch's advice as to how the reclassification should be implemented. (*Id*.) Finally, Defendant argues that the e-mail is protected not only by privilege, but also under the work product doctrine, as it was prepared by an attorney "'with an eye toward litigation.'" (*Id*. at 5 (quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1994)).)

In response, Plaintiffs – whose positions were reclassified pursuant to the directive set forth in the e-mail, and who obtained a copy of the e-mail in the course of their employment, prior to the commencement of this litigation – argue that the e-mail should not be read to contain legal advice, was not a communication between an attorney and a client, and was not intended to be, or was in fact kept, confidential. (*See* Letter to the Court from Adam Klein, Esq., dated Mar. 5, 2009 ("Plaintiffs' 3/5/09 Letter"), at 1.) Plaintiffs further argue that the e-mail is not protected by the work product doctrine because it was not prepared "in anticipation of litigation or for trial." (*See* Letter to the Court from Adam Klein, Esq., dated Feb. 24, 2009 ("Plaintiffs'

---

¹ Defendant's 3/3/09 Letter appears to contain two different exhibits labeled "Exhibit A." For ease of reference, the Court will deem the first of these exhibits "A1," and the second of these exhibits (the disputed e-mail) "A2."

2/24/09 Letter"), at 4-5 (citing Fed. R. Civ. P. 26(b)(3)).)  Finally, Plaintiffs argue that, even if the e-mail were subject to protection as a privileged communication or as work product material, Defendant has waived such protection by dissemination of the e-mail to potential plaintiffs and by the failure of defense counsel to reclaim the document immediately upon discovering that a copy was in Plaintiffs' possession.  (Plaintiffs' 2/24/09 Letter, at 5.)

### B.      Attorney-Client Privilege

The essential elements that must be shown by a party asserting the attorney-client privilege are:  "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) [was] made for the purpose of obtaining or providing legal advice."  *United States v. Construction Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996).

#### 1.      Communication Between Client and Counsel

Based on a declaration submitted by Gutfleisch, the Court accepts that he was involved with the Management Team that prepared the e-mail, that he provided legal advice to the members of that team in connection with his review of Defendant's compliance with the FLSA, that he had a hand in drafting the e-mail, and that it incorporates his legal advice. (*See* Declaration of Todd Gutfleisch, Esq., dated Mar. 3, 2009 ("Gutfleisch Decl."), attached as Ex. A1 to Defendant's 3/3/09 Letter, at ¶¶ 3-5.)  The Court also accepts that the e-mail was intended to be distributed only to Defendant's management-level employees, not to Plaintiffs.  (*See id.*, at ¶ 3.)

This, however, does not end the inquiry as to whether the e-mail itself, as distributed, should be considered privileged.  "The key, of course, to whether an attorney-client relationship existed is the intent of the client and whether he reasonably understood the [communications] to

be confidential." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, No. 08 Civ. 04213 (WHP) (THK), 2009 U.S. Dist. LEXIS 15530 (S.D.N.Y. Feb. 26, 2009).  While a communication from counsel does "not lose [its] privileged status when shared among corporate employees who share responsibility for the subject matter of the communication," *Baptiste v. Cushman & Wakefield, Inc.*, No. 03 Civ. 2102 (RCC) (THK), 2004 U.S. Dist. LEXIS 2579, at *6 (S.D.N.Y. Feb. 20, 2004), those who receive the communication must still reasonably understand that they are receiving the advice of counsel.  Otherwise, they cannot say that they understood that the communication was being made in the context of an attorney-client relationship.

Here, when distributed to management employees, the e-mail in question did not state that it was prepared by or was being sent from Gutfleisch; rather, the "sender" of the e-mail was identified only as the GTI Management Team.  (Defendant's 3/3/09 Letter, at Ex. A2.)  Nor did the e-mail state that it contained privileged information.  (*Id.*)  Nor did it state that any of the information incorporated therein had been obtained from counsel, or was based on communications from counsel, or even that counsel had been consulted.  (*Id.*)  Nor did it state that the policy change reflected in the e-mail was intended to implement a recommendation of counsel.  (*Id.*)

Defendant has the burden of establishing that the e-mail is privileged, *see Mercator Corp. v. United States*, 318 F.3d 379, 384 (2d Cir. 2002), and, as a threshold matter, this includes showing that the recipients of the e-mail would have understood that it contained or referenced a communication from counsel.  On this point, Defendant essentially asks the Court to assume that the recipients of the e-mail would have understood that the e-mail incorporated the advice of counsel because (1) the e-mail addressed the issue of FLSA compliance, (2) it noted facts

regarding the IT employees' job duties on which, according to Defendant, "no non-lawyer manager could ever have been expected to focus" (Defendant's 3/3/09 Letter, at 4), and (3) it referenced litigation against other companies. Yet none of these aspects of the e-mail necessarily signaled to the recipients that the e-mail contained legal advice. *Cf. Baptiste,* 2004 U.S. Dist. LEXIS 2579, at *7 (finding that it was "of no moment that the e-mail was not authored by an attorney or addressed to an attorney" where the e-mail at issue "was clearly conveying information and advice given to [its author] by . . . outside counsel"); *see also id.* at *2 (noting that the e-mail at issue specifically referenced the author's having spoken with counsel).)

    Indeed, all of the information in the e-mail could easily have been understood to have come from senior management, working in conjunction with Defendant's human resources ("HR") department, as can be seen from the follow-up memorandum that was apparently sent out by the HR department on or about December 11, 2007. (*See* Letter to the Court from Sam S. Shaulson, Esq., dated April 1, 2009 ("Defendant's 4/1/09 Letter") (enclosing the follow-up memorandum), and attachment thereto; Defendant's 3/3/09 Letter, at Ex. A2 (noting that follow-up would be sent on December 11 from "Corporate Sector HR").) Not only does that second communication also fail to mention any involvement of counsel, but it suggests that the recipients tell the reclassified employees that "Human Resources and technology management partnered to conduct a review of Technology jobs to ensure they are classified consistently from an overtime eligibility standpoint." (Defendant's 4/1/09 Letter, attached exhibit, at TG00003.)[2]

---

    [2] The Court notes that, while the December 11 memorandum was also submitted to the Court for *in camera* review, and has apparently been withheld from production by Defendant on the basis of privilege or the work product doctrine, the memorandum makes clear that the

Further, this follow-up memorandum explains that the reclassification was being made because, "[a]s a normal practice, we periodically review our jobs to ensure we have them classified consistently." (*Id.* at TG00006.)[3] There is no implication that this particular compliance review was actually conducted *by counsel* and that the upshot of the review was a recommendation *by counsel* to implement a reclassification. On the contrary, the plain implication of the communications, especially when read together, was that the determination to reclassify certain employees was made by HR and "management," as part of their "normal practice." (*Id.* at TG00003, TG00006.)

### 2. Confidentiality

Even if the Court were to find that an attorney-client relationship existed between Gutfleisch and the recipients of the e-mail, the way in which the e-mail was written in any event undermines any argument that a privileged communication was made with the expectation that it be kept confidential. Although the e-mail did request that the recipients "not begin any communication to employees prior to receiving specific details on December 11" (*see* Defendant's 3/3/09 Letter, at Ex. A2), the e-mail did not flag that any of its contents, in particular, were privileged and should not be communicated. Further, the December 11 follow-up memorandum (which, as stated above, was sent out by corporate HR) was plainly intended to provide guidance as to how to communicate with the employees whose positions had been reclassified; nothing therein identified any particular information that was supposed to be

---

statement quoted above was intended to be conveyed to the reclassified employees, rather than to be kept confidential. Thus, the statement itself cannot be considered privileged or confidential work product.

[3] *See* n.2, *supra*.

held back and *not* conveyed. (Defendant's 4/1/09 Letter, at attached exhibit.) Thus, nothing about the original e-mail or its follow-up gave the recipients any indication that portions of the e-mail contained legal reasoning or legal advice that should be held in confidence.

Moreover, the fact that one or more of the affected employees actually obtained the e-mail in the course of their employment (*see* Declaration of Tapas Sarkar Regarding Letter Sent to Potential Class Members, dated Feb. 24, 2009 ("Sarkar Decl."), at ¶¶ 2, 4-5, attached to Plaintiffs' 2/24/09 Letter) bolsters the Court's view that the recipients of the email would not have been aware that it contained confidential legal advice.

At bottom, Defendant has not satisfied its burden of demonstrating that the recipients of the e-mail would have reasonably understood that its contents, or any specific portion of those contents, contained legal advice that was being communicated in confidence.

### 3. Purpose of Providing Legal Advice

Finally, although a closer call, it is difficult to say that Defendant has shown that the purpose of the e-mail was to convey Gutfleisch's legal advice. Defendant has fairly demonstrated that, based on his legal analysis, Gutfleisch made a recommendation to the Management Team on the subject of the FLSA reclassification, and, as Defendant correctly posits (*see* Defendant's 3/3/09 Letter, at 1), "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation – or that advocates and promotes compliance, or oversees implementation of compliance measures – is legal advice." *In re County of Erie*, 473 F.3d 413, 422 (2d Cir. 2007). As noted above, however, the e-mail, on its face, does not show that it was authored by counsel, as was the case in *Erie, see* 473 F.3d at 415 (e-mails at issue

7

were between an attorney and county officials), and does not purport to share counsel's advice. Given the way in which the e-mail was presented, it could reasonably be concluded that the e-mail was distributed to managers not for the purpose of conveying counsel's advice, but rather for the purpose of beginning an effectuation of a corporate policy change.  If that is the case, then it is another reason why the e-mail should not be considered privileged.  *See id.* at 420 (in determining whether a communication is privileged, court should consider "whether the predominant purpose of the communication is to render or solicit legal advice").

       The Court, however, need not resolve whether the "predominant purpose" of the e-mail was to convey legal advice, given the fact that, as discussed above, Defendant has failed to satisfy its burden to show that the recipients of the e-mail would have reasonably understood that they were even receiving legal advice, which was intended to be held in confidence.

       **C.**     <u>**Waiver**</u>

       Even if the e-mail were found to be privileged, there would remain the question of waiver.  Plaintiffs argue that Defendant has waived any privilege by dissemination of the e-mail to potential class members, coupled with the subsequent failure of the defense counsel to reclaim the document immediately upon realizing that a copy was in Plaintiffs' possession. (Plaintiffs' 2/24/09 Letter, at 5.)  Plaintiffs' arguments are persuasive.

       In general, voluntary dissemination of a privileged document to an opposing party or a third party constitutes a waiver of privilege.  Such a waiver will be found regardless of whether the disclosure is made in the context of litigation or extrajudicially, although the scope of an extrajudicial waiver will be more narrow.  *See In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987).

An inadvertent disclosure of privileged information, however, will only be found to constitute a waiver of privilege in certain circumstances. For inadvertent disclosures made "in a Federal proceeding," the Court's analysis of waiver is now governed by Rule 502 of the Federal Rules of Evidence, which requires the Court to determine if the holder of the privilege "took reasonable steps to prevent disclosure" and "promptly took reasonable steps to rectify the error." Fed. R. Evid. 502(b)(2) and (3). These same factors are also generally weighed by the Court in the context of extrajudicial disclosures. *See Business Integration Services, Inc. v. AT&T Corp.,* 251 F.R.D. 121, 129 (S.D.N.Y. 2008). More particularly, the Court should consider "(1) the reasonableness of the precautions to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the extent of the disclosure, [and] (4) an over[arching] issue of fairness and the protection of an appropriate privilege which . . . must be judged against the care or negligence with which the privilege is guarded." *Id*. (internal quotations and citation omitted).

In this case, as the Court has already noted, Defendant does not appear to have taken particular care to prevent the dissemination of the e-mail or the supposedly privileged portions of its contents to the reclassified employees.

Further, the content of the e-mail is central to the claims made in this case. Defendant should have identified the e-mail to its litigation counsel at the very outset of this litigation, at the time when counsel was presumably conducting an investigation of Plaintiffs' claims and preparing to make initial disclosures under Rule 26(a)(1) of the Federal Rules of Civil Procedure. Assuming Defendant did identify this document at that time, Defendant should have then made a determination as to whether the document was privileged and thus not subject to disclosure in the litigation.

It is the Court's understanding that, in this action, Defendant served its initial disclosures on September 15, 2008. (Letter to the Court from Ozzai Miazad, dated April 1, 2009 ("Plaintiffs' 4/1/09 Letter"), at 1.) Thus, by that date, at the latest, Defendant should have been aware of the e-mail and assessed whether it contained a privileged communication.[4] On December 11, 2008, Plaintiffs produced a copy of the e-mail, as part of own document production. (Plaintiffs' 4/1/09 Letter, at 2.) According to Plaintiffs, the e-mail was the very first document produced, in a relatively small group of documents (532 pages). (*See* Plaintiffs' 4/1/09 Letter, at 2; Letter to Sam S. Shaulson, Esq. from Molly Brooks, Esq., dated Dec. 11, 2008.) As soon as Defendant saw the e-mail on top of the stack of produced documents, it should have realized that Plaintiffs had come into possession of a document that, according to Defendant, was privileged. At a minium, if, as Defendant now contends, the e-mail contained an analysis that could only have come from an attorney, Defendant should have begun an investigation at that time as to the potentially privileged status of the document.[5]

Defendant seems to take the position that it could not have argued that the document was privileged (and that privilege had not been waived) until counsel first inquired of Plaintiffs as to

---

[4] Arguably, Defendant should have discovered and assessed the e-mail much sooner, given that this case was filed in March, 2008, and that Plaintiff's initial document requests, as to which the e-mail would have been responsive, were served in June, 2008. (Plaintiffs' 4/1/09 Letter, at 1.) Although Defendant objected to Plaintiffs' initial demands as overly broad, counsel should, nonetheless, have begun gathering at least those documents that were plainly central to the case.

[5] Defendant states that, although it received Plaintiffs' document production in December 2008, it did not begin to review the production until some time in January 2009, in preparation for Plaintiffs' depositions. (Letter to the Court from Defendant regarding discovery, dated Apr. 1, 2009 ("Defendant's 4/1/09 Discovery Timeline"), at 1.) Especially given that the e-mail was the very first document produced, Defendant's implicit suggestion that it did not learn of the document's production until a month after the production was made is difficult to accept.

how they came into possession of the document. (*See* Defendant's 4/1/09 Discovery Timeline, at 1-2.) Defendant, however, did not raise such a question with Plaintiffs' counsel or, apparently, say anything at all about the document to Plaintiffs until the February 11, 2009 deposition of plaintiff Tapas Sarkar ("Sarkar"), who presumably confirmed that he had received a copy of the e-mail while an employee of Defendant. (*Id.*, at 2 (stating that Sarkar was questioned on the e-mail during his deposition).)

Even at that point, however, Defendant's counsel made no assertion as to the claimed privileged status of the document. (*See* Plaintiff's 4/1/09 Letter, at 2.) This stands in contrast to the conduct of defense counsel in *Baptiste*, a case upon which Defendants rely heavily for the proposition that their delay in acting to reclaim the document was reasonable. In that case, the defendant determined that it needed to inquire of the plaintiff as to how supposedly privileged documents had come into his possession, but, when the plaintiff's deposition yielded no evidence that he was authorized to have the documents, defense counsel immediately, on the record, demanded the documents' return. *See Baptiste,* 2004 U.S. Dist. LEXIS 2579, at *12. Here, even after questioning plaintiff Sarkar and presumably satisfying itself that privilege had been preserved, Defendant said nothing about the matter for another week. (Plaintiff's 4/1/09 Letter, at 2; Defendant's 4/1/09 Discovery Timeline, at 2.) It was not until February 17, 2009, more than two months after the e-mail had been produced by Plaintiffs, and just one day before Defendant's corporate witness was scheduled to be deposed pursuant to Fed. R. Civ. P. 30(b)(6), that Defendant's counsel, for the first time, asserted a claim of privilege. (*Id.*)

Under the circumstances, the relevant factors weigh in favor of a finding that Defendant has waived attorney-client privilege, assuming the e-mail is actually a privileged

11

communication. First, Defendant took no steps to prevent the dissemination of privileged information, apart from including a request in the e-mail that recipients "not begin any communication to employees prior to receiving specific details on December 11." (Defendant's 3/3/09 Letter, at Ex. A2.) As discussed above, this was not even sufficient to flag the portions of the e-mail that were supposedly privileged.

Second, from the December 2009 date when Defendant learned (or, if they had but looked at Plaintiffs' document production, should have learned) of the e-mail's disclosure, Defendant took an inexplicably long time to demand its destruction or return. "Inadvertent disclosure has been held to be remedied when the privilege was asserted *immediately* upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." *United States v. Rigas*, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003) (emphasis added) (internal quotation marks and citation omitted). In this case, Defendant's assertion of privilege was far from immediate, as Defendant made no reference to the document's purportedly privileged status for over two months. This is a sufficiently long period of time to warrant a finding of waiver. *See LaSalle Bank Nat'l Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 U.S. Dist. LEXIS 59301, at *17 (S.D.N.Y. Aug. 13, 2007) (privilege waived where counsel objected to e-mail as privileged during deposition, but did not ask for its return until a month later); *Liz Claiborne v. Mademoiselle Knitwear*, No. 96 Civ. 2064 (RWS), 1996 U.S. Dist. LEXIS 17094 (S.D.N.Y. Nov. 19, 1996) (privileged waived where return was requested one month after the disclosure was discovered); *see also Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, 232 F.R.D. 160, 165 (E.D.N.Y. 2005) (six-day delay between production to plaintiff and plaintiff's discovery of the inadvertent disclosure weighed in

favor of waiver, although timeliness factor, overall, weighed against waiver, where plaintiff's counsel then immediately requested return of the document); *Semi-Tech Litig. LLC v. Bankers Trust Co.*, No. 02 Civ. 0711 (LAK), 2002 U.S. Dist. LEXIS 13781, at *2 (finding no waiver of privilege where error was discovered and called to opposing counsel's attention within 24 hours) (S.D.N.Y. July 27, 2002).

Third, although the question of the "extent of the inadvertent disclosure" is "mainly of concern in the context of inadvertent disclosures during discovery," rather than prior to discovery, *Business Integration Services,* 251 F.R.D. at 129, here, it should be noted that the volume of Plaintiff's discovery was not so large that the e-mail would have been difficult for Defendant to identify.  On the contrary, the document's existence in that production would have been readily apparent.  (*See* Plaintiffs' 4/1/09 Letter, at 2; Letter to Sam S. Shaulson, Esq. from Molly Brooks, Esq., dated Dec. 11, 2008.)

Finally, issues of fairness weigh in favor of waiver in this case, given that Defendant had ample opportunity to discover and assert the claimed privileged status of the e-mail, but waited until the day before the Rule 30(b)(6) deposition to raise its privilege claim.  (Plaintiff's 4/1/09 Letter, at 2.)  Plaintiffs should not have been forced to alter their deposition preparation at the last minute, so as to take account of Defendant's belatedly raised claim.

Accordingly, even if the e-mail were privileged, privilege has been waived.

### D. **Work Product Protection**

Defendant contends that, even if the e-mail is not privileged, or if attorney-client privilege has been waived, the document is in any event subject to protection under the work product doctrine.  (*See* Defendant's 3/3/09 Letter, at 3.)  The Court disagrees.

The work product doctrine protects documents prepared "in anticipation of litigation" by a party or its representatives, Fed. R. Civ. P. 26(b)(3)(A), including those enlisted by counsel "to perform investigative or analytical tasks to aid counsel in preparing for litigation," *Kayata v. Foote, Cone & Belding Worldwide, L.L.C.*, No. 99 Civ. 9022 (VM) (KNF), 2000 U.S. Dist. LEXIS 5314, at *5 (S.D.N.Y. Apr. 25, 2000). A document will be found to have been prepared "in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation marks and citation omitted). If, regardless of the prospect of litigation, the document would have been prepared anyway, in the ordinary course of business or in "essentially similar form," it is not entitled to work product protection. *Id.*; *see also id.* at 1203-04.

In this instance, Defendant has not satisfied its burden of demonstrating that, but for the prospect of litigation, the e-mail in question would not have been prepared in the ordinary course of business or in substantially the same form. The supposed purposes of the reclassification were to eliminate inconsistencies as to job classifications within the company, to ensure compliance with the FLSA, and, possibly, to *avoid* litigation. Presumably, Defendant would have acted to accomplish these objectives, in much the same manner, regardless of whether the reclassification might itself result in litigation. Thus, Defendant has not shown that, under *Adlman*, the e-mail is entitled to work product protection.

**Conclusion**

For all of the above-stated reasons, Defendant's application to compel the return or destruction of the e-mail in question is denied.

In addition, for many of the same reasons discussed herein, the Court can, at this time, discern no basis for Defendant's withholding from production the December 11, 2008 memorandum that served as a follow-up to the e-mail at issue. Specifically, the memorandum does not appear to be privileged, in that it does not, on its face, identify or convey any advice from counsel. (Defendant's 4/1/09 Letter (attachment).) In addition, the memorandum does not appear to be entitled to work product protection, as – like the e-mail that preceded it – it seems likely that the memorandum would have been prepared in essentially similar form to implement the reclassification, regardless of the prospect of potential litigation.

The Court notes, however, that, as the dispute raised before the Court did not involve the December 11 memorandum, Defendant has not had the opportunity to explain its reasons for withholding this memorandum from production. Accordingly, the Court at this time will merely direct Defendant to re-review this memorandum, as well as any other documents that may be on its privilege log and that relate to the implementation of the reclassification, to determine whether – in light of this Court's rulings – a claim of privilege or work product protection as to such documents, or any portions thereof, can still be asserted in good faith. To the extent Defendant withdraws any claims of privilege or work product immunity based on this decision, production of the documents in question, either entirely or, as appropriate, in redacted form, should be made promptly.

As stated by the Court in its conference with all counsel on March 31, 2009, the deadline for submission of Defendant's motion for summary judgment and Plaintiffs' motion for conditional class certification is extended to April 14, 2009, with oppositions to be served and filed by May 14, 2009, and replies, if any, to be served and filed by June 1, 2009.

Dated: New York, New York
April 10, 2009

SO ORDERED

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable Colleen McMahon, U.S.D.J.

all counsel (via ECF)