**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Carmelyn Malalis (CM 3350)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**ALTSHULER BERZON LLP**
James M. Finberg (admitted *pro hac vice*)
Eve H. Cervantez (admitted *pro hac vice*)
Peter E. Leckman (CA Bar # 235721)
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151

**LIEFF, CABRASER, HEIMANN**
  **& BERNSTEIN, LLP**
Kelly M. Dermody (admitted *pro hac vice*)
Jahan C. Sagafi (admitted *pro hac vice*)
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW CLARKE and TAPAS SARKAR, individually and on behalf of other similarly situated persons, | |
| Plaintiffs, | Case No. 1:08-cv-02400-CM-DF |
| v. | |
| JP MORGAN CHASE & CO., | |
| Defendant. | Hon. Colleen McMahon |

## REPLY MEMORANDUM OF PLAINTIFFS IN SUPPORT OF MOTION FOR
## CONDITIONAL COLLECTIVE ACTION CERTIFICATION

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... iii

I.    INTRODUCTION ................................................................................................ 1

II.    ARGUMENT ...................................................................................................... 5

    A.  The Liberal *Hoffmann* Notice Procedure Is Designed to Effectuate the Broad Remedial Goals of the FLSA. ...................................................................... 5

    B.  The Lenient "Similarly Situated" Standard for Notice Is Appropriate at this Early Stage of Litigation. .................................................................................. 7

    C.  Plaintiffs Have Met The Lenient Standard for Conditional Certification Based on Chase's Own Analysis of Technology Positions. ....................................... 9

    D.    Plaintiffs Are Similarly Situated With Respect to Their Job Duties and How They Were Treated By Chase. ....................................................................... 12

        1.  Minor Variations in Job Duties Are Irrelevant at this Initial Notice Stage. ... 12

        2.  Plaintiffs' Claims Are United by Chase's Conclusion that They Were Misclassified Given Their Job Duties, Coupled With Chase's Uniform Decision to Deny Them Back Pay Despite Their Misclassification. .............. 15

    E.  Chase's Own Investigation of Job Duties and Reclassification Decision, Coupled With Its Uniform Failure to Pay Back Wages, Established That Members of the Proposed Collective Action Are Similarly Situated. ................................... 16

    F.  Plaintiffs Are Not Required to Establish That Other Employees Seek to Join the Litigation. .............................................................................................. 18

    G.  The Notice Plaintiffs Have Proposed Is Timely, Accurate, and Informative. ........... 19

    H.  The Court Should Toll the Statute of Limitations on FLSA Claims Until the End of the Opt In Deadline. ..................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Inter-Con Sec. Sys., Inc.*,
    242 F.R.D. 530 (N.D. Cal. 2007)...........................................................................................20

*Aguirre v. SBC Commc'ns, Inc.*,
    No. 05 Civ. 3198, 2007 WL 772756 (S.D. Tex. Mar. 12, 2007) ..........................................7, 9

*Amendola v. Bristol-Myers Squibb Co.*,
    558 F. Supp. 2d 459 (S.D.N.Y. 2008)..................................................................................18

*Arnold v. Ben Kanowsky, Inc.*,
    361 U.S. 388 (1960)..............................................................................................................6

*Bagwell v. Florida Broadband, LLC*,
    385 F. Supp. 2d 1316 (S.D. Fla. 2005) ...............................................................................15

*Baldozier v. Am. Fam. Mutual Ins.*,
    375 F.Supp. 2d 1089 (D. Colo. 2005)..................................................................................20

*Barron v. Henry County Sch. Sys.*,
    242 F. Supp. 2d 1096 (M.D. Ala. 2003) ...............................................................................9

*Brazos River Auth. v. GE Ionics, Inc.*,
    469 F.3d 416 (5th Cir. 2006) ...............................................................................................17

*Cameron-Grant v. Maxim Healthcare Servs., Inc.*,
    347 F.3d 1240 (11th Cir. 2003) .............................................................................................6

*Chowdhury v. Duane Reade, Inc.*,
    No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007) .......................................9, 10

*Cuzco v. Orion Builders, Inc.*,
    477 F. Supp. 2d 628 (S.D.N.Y. 2007)...................................................................................7

*Damassia v. Duane Reade, Inc.*,
    No. 04 Civ. 8819, 2006 WL 2853971 (S.D.N.Y. Oct. 5, 2006) .......................................10, 13

*Davis v. Abercrombie & Fitch Co.*,
    No. 08 Civ. 1859, 2008 WL 4702840 (S.D.N.Y. Oct. 23, 2008) ........................................14

*Davis v. Charoen Pokphand (USA) Inc.*,
    303 F. Supp. 2d 1272 (M.D. Ala. 2004) ........................................................................7, 8, 19

*Dean v. Priceline.com, Inc.*,
    No. 3:00 Civ. 1273, 2001 WL 35961086 (D. Conn. June 6, 2001) ..........................................9

*Delgado v. Ortho-McNeil, Inc.*,
    No. 07 Civ. 263, 2007 WL 2847238 (C.D. Cal. Aug. 7, 2007) ...............................................11

*Dumitrescu v. Mr. Chow Enters., Ltd.*,
    No. 07 Civ. 3601, 2008 WL 2600667 (S.D.N.Y. June 30, 2008)...........................................15

*Fasanelli v. Heartland Brewery*,
    516 F. Supp. 317 (S.D.N.Y. 2007).........................................................................................12

*Francis v. A&E Stores, Inc.*,
    No. 06 Civ. 1638, 2008 WL 4619858 (S.D.N.Y. Oct. 16, 2008) .....................................13, 16

*Gieseke v. First Horizon Home Loan Corp.*,
    408 F. Supp. 2d 1164 (D. Kan. 2006) ......................................................................................8

*Heckler v. DK Funding, LLC*,
    502 F. Supp. 2d 777 (N.D. Ill. 2007) .....................................................................................19

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997)........................................................................................7, 9

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)....................................................................................................... passim

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265 (M.D. Ala. 2004) ...............................................................................7, 9

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. 2007) (McMahon, J.) ...................................................3, 7, 14, 15

*Jacobsen v. Stop & Shop Supermarket Co.*,
    No. 02 Civ. 5915, 2008 WL 21136308 (S.D.N.Y. May 15, 2003).........................................11

*Kautsch v. Premier Commc'ns*,
    504 F. Supp. 2d 685 (W.D. Mo. 2007) ..................................................................................19

*King v. West Corp.*,
    No. 8:04 Civ. 318, 2006 WL 118577 (D. Neb. Jan. 13, 2006)................................................9

*Laroque v. Domino's Pizza, LLC*,
    557 F. Supp. 2d 346 (E.D.N.Y. 2008) .....................................................................................2

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) ...........................................................................................10

*Leuthold v. Destination Am., Inc.*,
    224 F.R.D. 462 (N.D. Cal. 2004)..................................................................8

*Levinson v. Primedia, Inc.*,
    No. 02 Civ. 2222, 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ...........................9

*Lynch v. United Servs. Auto. Ass'n*,
    491 F. Supp. 2d 357 (S.D.N.Y. 2007)..............................................3, 7, 10, 13

*Marcus v. Am. Contract Bridge League*,
    254 F.R.D. 44 (D. Conn. 2008)..........................................................10, 14,15

*Martin v. Indiana Michigan Power Co.*,
    381 F.3d 574 (6th Cir. 2004) ..................................................................6

*Mike v. Safeco Ins. Co. of Am.*,
    274 F. Supp. 2d 216 (D. Conn. 2003) ...........................................................10

*Morden v. T-Mobile USA, Inc.*,
    No. 05 Civ. 2112, 2006 WL 2620320 (W.D. Wash. Sept. 12, 2006) ....................15

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) .........................................................3, 5, 11

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
    111 F. Supp. 2d 493 (D. N.J. 2000) ..............................................................9

*Neary v. Metro. Prop. & Cas. Ins. Co.*,
    517 F. Supp. 2d 606 (D. Conn. 2007)........................................7, 10, 18, 19

*Nerland v. Caribou Coffee Co.*,
    564 F. Supp. 2d 1010 (D. Minn. 2007)........................................................11

*Patton v. Thomson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ....................................................11, 16

*Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*,
    972 F.2d 6 (1st Cir. 1992)......................................................................17

*Reab v. Elec. Arts, Inc.*,
    214 F.R.D. 623 (D. Colo. 2002) ...............................................................19

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1988)..........................................................15

*Richards v. Computer Scis. Corp.*,
    No. 3:03 CV 630, 2004 WL 3517039 (D. Conn. Sept. 28, 2004) ...............11, 14, 16

*Rocky Mountain Helicopters v. Bell Helicopters Textron,*
    805 F.2d 907 (10th Cir. 1986) ................................................................................17

*Sanft v. Winnebago Indus., Inc.,*
    214 F.R.D. 514 (N.D. Iowa 2003) .........................................................................19

*Scholtisek v. Eldre Corp.,*
    229 F.R.D. 381 (W.D.N.Y. 2005).....................................................................2, 14

*Scott v. Aetna Servs., Inc.,*
    210 F.R.D. 261 (D. Conn. 2002).............................................................................16

*Thiessen v. Gen. Elec. Capital Corp.,*
    267 F.3d 1095 (10th Cir. 2001) ................................................................................3

*Tony & Susan Alamo Found. v. Sec'y of Labor,*
    471 U.S. 290 (1985)..................................................................................................6

*Torres v. Gristede's Operating Corp.,*
    No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2009).......................3, 10

*Trinh v. JP Morgan Chase & Co.,*
    No. 07 Civ. 1666, 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008) .............................9

*Westmoreland v. CBS, Inc.,*
    601 F. Supp. 66 (S.D.N.Y. 1984)...........................................................................18

**STATUTES**

29 U.S.C. §§ 255, 256(b) (2009) ....................................................................................2

**OTHER AUTHORITIES**

29 C.F.R. § 779.101 (2009) .....................................................................................6, 16

Fed. R. Evid. 407 ...............................................................................................4, 17, 18

## I.      <u>INTRODUCTION</u>

In *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the United States

Supreme Court emphasized that Congress expressly authorized collective actions under the Fair

Labor Standards Act ("FLSA") and stated its policy that persons with similar claims "should

have the opportunity to proceed collectively."  Here, the members of the proposed FLSA

collective action have similar claims.  They all had similar job duties, and were all denied

overtime through the same policies and decisions.  All 635 members of the proposed collective

action were employed by JPMorgan Chase Bank, N.A. ("Chase") and provided computer

maintenance and support.  Chase uniformly classified them all as exempt from overtime, then did

a thorough examination of their job duties and concluded they were all misclassified and re-

classified them as non-exempt, but uniformly failed to pay any of them back pay for the period

during which they were misclassified.  That common policy decision by Chase—failing to pay

overtime to persons working in jobs where Chase, after a detailed review of job duties,

concluded that they were misclassified—unites the claims of all proposed collective action

members.  The Supreme Court concluded in *Hoffmann* that in such a case, a collective action

benefits both class members and the court system: "A collective action allows . . . the advantage

of lower individual costs to vindicate rights by the pooling of resources.  The judicial system

benefits by efficient resolution in one proceeding of common issues of law and fact arising from

the same alleged . . . activity."  *Id*.

In explaining its conclusion that court facilitation of notice of a claim under the FLSA

procedures is proper, if not necessary, the Supreme Court reasoned in *Hoffmann* that the benefits

of a collective action "depend on employees receiving accurate and timely notice concerning the

pendency of the collective action, so that they can make informed decisions about whether to

participate."  *Id*.  Here, the stipulation and order regarding tolling of FLSA claims provides that

the statute of limitations on such claims shall only be tolled "to the date the Court considers Defendant's summary judgment motion." (Declaration of Sam S. Shaulson, Esq. in support of Defendant's Opposition to Plaintiffs' Motion for Conditional Collective Action Certification ("Shaulson Decl.") Exh. C, Stip. & Order re Tolling of FLSA Claims ¶ 1, Jan. 28, 2009.) After the Court decides defendant's motion for summary judgment,[1] the statue of limitations on the FLSA claims of proposed collective action members will run until they opt in. 29 U.S.C. §§ 255, 256(b) (2009). Accordingly, sending notice of the FLSA claim in this action to proposed collective action members is necessary to ensure that they are aware of the litigation and have an opportunity to protect their rights by opting in.[2]

Chase emphasizes that the job duties of the proposed collective action members are not identical—some collective action members worked with Novell products, while others worked with Microsoft products. (Def.'s Br. 7.) But "identical" is not the standard for initial stage notice. The FLSA merely requires that "courts determine whether employees are similarly

---

[1]     As set forth in Plaintiffs' opposition to Chase's motion for summary judgment, the evidence to date makes clear that plaintiffs Clarke and Sarkar were misclassified – as Chase itself concluded in a non-litigation context – and thus have meritorious claims. At a minimum, disputed issues of material fact preclude the entry of summary judgment.

        Apparently recognizing that the Court is likely to deny its summary judgment motions, Chase argues in the alternative that "[e]ven if the Court were to deny summary judgment but conclude that Chase had a good argument at trial for proving Plaintiffs' exemption status, the Court should deny Plaintiffs' certification motion." (Memorandum of Law In Opposition to Plaintiffs' Motion For Conditional Collective Action Certification ("Def.'s Br.") 10, n.3.) Not only does this argument ignore the weakness of Chase's position on the merits, it ignores the overwhelming majority of case law holding that the decision about whether to grant *Hoffmann* notice is a procedural question as to which merits analysis is irrelevant. *See, e.g., Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("The standard in this circuit is clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification."); *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 391 (W.D.N.Y. 2005) (defendant's arguments "go to the merits of plaintiff's claims, which are not relevant at this stage").

[2]     The assertion in Chase's brief that "there is no need to rush to get notice to members of the putative collective action before the statute of limitations runs on their claims because, as Plaintiffs are well-aware, the statute of limitations is not running" (Def.'s Br. 13), ignores that the statute of limitations will begin to run as soon as the Court decides Chase's summary judgment motion.

2

situated—not whether their positions are identical." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).  As this Court has held repeatedly, "factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007).  "[F]actual variations . . . do not undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (McMahon, J.).  Recognizing that plaintiffs have easily met the lenient standard for granting initial stage FLSA notice, *see id.* at 367 (quoting *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2009)), Chase argues that Plaintiffs should face a higher burden because they have received some discovery.  Such an argument is contrary to a long line of cases holding that for a court to ascertain the proper contours of an action under the FLSA opt in procedures, the liberal first stage standard should be applied until discovery is complete.  *See, e.g., Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir. 2001) ("At the conclusion of discovery . . . the court then makes a second determination, utilizing a stricter standard of 'similarly situated.'").

Discovery in this case has been limited and Plaintiffs have received no information on the vast majority of potential collective action members.  Neither Plaintiffs nor the Court have full information at this time about the job duties of the various proposed collective action members.  Chase's alternative contention that this Court should at most grant conditional certification to the two teams on which the named Plaintiffs worked highlights this point.  This Court cannot make an informed determination about whether the claims of all proposed collective action members can be resolved in one trial until there has been discovery about the job duties of all proposed collective action members.  To date, there has not been such discovery.  Defendant has not produced the names and addresses of class members, and Plaintiffs have conducted no

depositions about the job duties of the employees of five of seven teams.  At the close of

discovery, the parties can submit informed briefs about the appropriate scope of the trial,

including addressing whether subclasses might be appropriate.  Such a determination is not

possible at this time.  It is sufficient for initial-stage notice that all proposed collective action

members were, as here, similarly affected by a common policy and practice.

Recognizing that its uniform determination that the proposed members of the collective

action were all misclassified, coupled with its uniform failure to pay them back wages, is

problematic for it, Chase argues that evidence of the company's investigation of the job duties of

proposed collective action members and reclassification of them is barred under Federal Rule of

Evidence 407 as a subsequent remedial measure.  This argument is incorrect.  Courts routinely

distinguish between post-event investigations and any remedial actions that may result from

those investigations.  It is entirely appropriate for the Court to rely on Chase's own investigation

of the job duties of proposed collective action members and its determination that the employees

performing the jobs at issue were misclassified.[3]

Chase's suggestion that this Court cannot assess whether members of the proposed

collective action were misclassified without an individualized analysis of their specific duties,

ignores the fact that Chase did not consider such variations significant during its "accurate and

careful categorization."   (Declaration of Tapas Sarkar in support of Plaintiffs' Motion for

Conditional Collective Action Certification And *Hoffmann-La Roche* Notice ("Sarkar Decl.")

Exh. A.) Under the standard Chase advances, misclassification cases could never proceed as

---

[3]    The remedial measure was to pay the reclassified employees overtime after they were
reclassified.  Plaintiffs do not seek to introduce that fact.  Moreover, Rule 407 only bars
admission of subsequent remedial measures when used to prove negligence or culpability.  For
this Motion, Plaintiffs are offering the reclassification investigation only to demonstrate that the
positions are similarly situated.

collective actions.  For that reason, courts have repeatedly rejected the argument Chase advances, and find that if a company makes classification decisions about employees by job category instead of through individualized inquiry, it is appropriate for the Court to do the same.  *See, e.g., Morgan*, 551 F.3d at 1264 ("Plaintiffs' evidence established that Family Dollar uniformly exempted all store managers from overtime pay requirements, and its exemption decision did not turn on any individualized factors.  Not one.  There is nothing unfair about litigating a single corporate decision in a single collective action.").

In *Hoffmann,* the U.S. Supreme Court praised "early judicial intervention in the management of litigation" noting that, among other things, early court intervention can ensure "timely, accurate, and informative," notice so that proposed collective action members can make informed decisions about whether to participate.  *Hoffmann-La Roche*, 493 U.S. at 171-72. Notice to proposed FLSA collective action members is necessary here to protect their substantive rights under the FLSA and to gain the advantages of early and efficient judicial management.  At this early stage, granting conditional certification will safeguard potential plaintiffs' rights while causing no prejudice to Chase.  Plaintiffs have more than satisfied the lenient stage-one notice standard.

## II.    ARGUMENT

### A.    The Liberal *Hoffmann* Notice Procedure Is Designed to Effectuate the Broad Remedial Goals of the FLSA.

As the Supreme Court made clear in *Hoffmann*, "[t]he broad remedial goal of the [FLSA] should be enforced to the full extent of its terms."  *Hoffmann-La Roche*, 493 U.S. at 173. Contrary to Chase's contention, Congress did not amend the "FLSA to ***limit*** the ability of employees to proceed collectively."  (Def.'s Br. 10 (emphasis in original).)  The 1947 Portal-to-Portal Act amendment to the FLSA eliminated representative actions brought by completely

uninterested third parties, such as labor unions.  *See Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003).  The amendment in no way limited employees' ability to bring suit on behalf of others similarly situated, as is the case here.  *Hoffmann-La Roche*, 493 U.S. at 173 ("the representative action by plaintiffs *not themselves possessing claims* was abolished" (emphasis added) (citation omitted).)  The notice procedure at issue in this Motion is integral to furthering the FLSA's "broad remedial goal" by encouraging potential collective action members to make informed decisions about their substantive rights and to enable the court and the parties to realize the benefits and efficiencies of collective actions.  *See id.* at 170, 173.

It is also not true, as Chase suggests, that the protections of the FLSA are limited only to the lowest paid of the nation's workforce.[4]  Courts construe the FLSA "liberally to apply to the furthest reaches consistent with congressional direction."  *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (internal quotation marks omitted); *see also Hoffmann-La Roche*, 493 U.S. at 173.  For this reason, its exemptions are narrowly construed.  *See, e.g., Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).  Particularly in light of the enormous changes in the employment landscape, it is unsurprising that the FLSA's protections are regularly held to apply to a range of modern job positions, such as technology positions at issue in this case.  *See, e.g., Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 580 (6th Cir. 2004)

---

[4]      The FLSA exemptions must be applied with the same rigor and exactitude at any level below the $100,000 salary threshold.  *See* 29 C.F.R. § 779.101 (2009).  For the vast majority of Mr. Sarkar's employment, he earned far less than $100,000 per year (Shaulson Decl. Ex. F, Excerpts of Deposition of Tapas Sarkar, Feb. 11, 2009, at 54:3-55:22), so there are substantial periods during which the "highly compensated employee" exemption does not apply.  Without the benefit of discovery regarding the compensation levels of the other proposed collective action members, neither Plaintiffs nor the Court can make informed assessments about whether the standards applying to persons making over $100,000 apply to some members of the proposed collective action for some period of their employment, and if so, whether a subclass would be appropriate.  That is the type of determination appropriately made after the close of discovery.

(FLSA requires overtime for employees responsible for "installing and upgrading hardware and software," "configuring desktops," and software "troubleshooting").

> **B.** **The Lenient "Similarly Situated" Standard for Notice Is Appropriate at this Early Stage of Litigation.**

At this initial notice stage Plaintiffs face a minimal burden of showing that other employees are similarly situated. They are only required to make a "modest factual showing" that they and other employees "were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997); *see also Lynch*, 491 F. Supp. 2d at 368 (describing the burden as "minimal" and "very low").

Chase seeks to end-run this low burden, suggesting that the limited discovery conducted to date in this case is sufficient to bypass the notice stage and proceed directly to the higher standard employed under stage two. (Def.'s Br. 12.) It is well established, however, that the lenient standard should be applied even when discovery has been conducted; the higher standard is only appropriate where discovery is complete. *See, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) ("[E]ven though discovery is underway, it would be inappropriate at this time to attempt to make more than the first-step certification decision."); *Iglesias-Mendoza*, 239 F.R.D. at 367, 368 (court is to apply "fairly lenient" standard in granting conditional certification where only "limited discovery" has taken place); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 619 (D. Conn. 2007) (rejecting the argument that because discovery is underway a FLSA collective action plaintiff should be held to a higher standard).[5]

---

[5]    The out of circuit cases cited by Chase also recognize this rule. *See Aguirre v. SBC Commc'ns, Inc.*, No. 05 Civ. 3198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) (noting that the first stage may only be bypassed after "substantial discovery" or where discovery is "largely complete"); *Davis v. Charoen Pokphand (USA) Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (relying on cases where there had been "extensive" discovery); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (noting that parties had conducted "extensive discovery").

The discovery in this case has been limited and targeted specifically to prepare for a motion for conditional certification under the lenient initial stage one standard.  Chase has not provided the names and addresses of collective action members.  The discovery has focused on the named Plaintiffs.  Complete discovery is needed before any determination under the second-stage standard to allow Plaintiffs to present to the Court an informed assessment of the proper scope of the trial.  *See Gieseke v. First Horizon Home Loan Corp.,* 408 F. Supp. 2d 1164, 1167 (D. Kan. 2006) ("[T]he court cannot conclude that the evidence is representative of what plaintiffs would present given further discovery."); *Davis v. Charoen Pokphand (USA) Inc.*, 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004) (complete discovery is required to allow plaintiffs to "marshal their best evidence").

A more onerous standard at this early stage would be inconsistent with the broad remedial goals of the FLSA.  *See Hoffmann-La Roche*, 493 U.S. at 173.  Such a standard would deprive potential class members of the opportunity to make informed decisions about their FLSA rights.  *See Leuthold v. Destination Am., Inc*., 224 F.R.D. 462, 468 (N.D. Cal. 2004) ("[B]eginning with tier one of the analysis is the most equitable means of proceeding. . . . [S]hould the court bypass tier one entirely, some potential plaintiffs might not become aware of the lawsuit and would not have an opportunity to join the suit. . . . The potential prejudice to plaintiffs of bypassing tier one thus is significant.").

Chase's argument that there is no need to provide notice to potential members of the collective action because the statute of limitations is not running (Def.'s Br. 13) is incorrect.  The tolling agreement provides that the statute of limitations will begin to run again immediately upon a decision on the motion for summary judgment. (Shaulson Decl. Exh. C.)

In such circumstances, the Supreme Court has held that court-authorized notice is proper. *Hoffmann-La Roche*, 493 U.S. at 171-72.

C.    **Plaintiffs Have Met The Lenient Standard for Conditional Certification
Based on Chase's Own Analysis of Technology Positions.**

Plaintiffs easily meet the low burden of showing that they are similarly situated to the

potential collective action members.  Chase's uniform classification scheme—first classifying all

employees in these positions as exempt, and then reclassifying the same positions and employees

as non-exempt without compensating them for overtime worked while they were misclassified—

is a common policy sufficient for certification.  *See, e.g., Chowdhury v. Duane Reade, Inc.*, No.

06 Civ. 2295, 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2, 2007) (allegations that plaintiffs were

common victims of failure to pay overtime is sufficient to support conditional certification);

*Barron v. Henry County Sch. Sys.*, 242 F. Supp. 2d 1096, 1105 (M.D. Ala. 2003) (allegations of

a practice of denying overtime pay supports conditional certification); *Hoffmann*, 982 F. Supp. at

261 (burden is met with a "modest factual showing" that plaintiffs "were victims of a common

policy or plan that violated the law") (collecting cases).

Chase contends that its determination to uniformly reclassify the relevant group of

employees cannot be a sufficient basis for finding that the potential class members are similarly

situated.  In making this argument, Chase relies almost entirely on decisions denying conditional

certification based on allegations of *misclassification,* rather than on a company determination to

*reclassify* a group of employees, as is the case here.[6]  This reasoning is flawed for two reasons.

First, Chase's misclassification cases say little about a situation such as this where the employer

---

[6]       *Trinh v. JP Morgan Chase & Co.*, No. 07 Civ. 1666, 2008 WL 1860161, at *4 n.2 (S.D.
Cal. Apr. 22, 2008) (allegation of misclassification); *Aguirre v. SBC Commc'ns, Inc.*, No. 05
Civ. 3198, 2007 WL 772756, at *15 (S.D. Tex. Mar. 12, 2007) (same); *Holt v. Rite Aid Corp.*,
333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004) (same); *Levinson v. Primedia, Inc.*, No. 02 Civ.
2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (same); *Dean v. Priceline.com, Inc.*,
No. 3:00 Civ. 1273, 2001 WL 35961086, at *2 (D. Conn. June 6, 2001) (same); *see also King v.
West Corp.*, No. 8:04 Civ. 318, 2006 WL 118577, at *13 (D. Neb. Jan. 13, 2006) (finding
allegation of misclassification insufficient during second stage of certification); *Morisky v. Pub.
Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D. N.J. 2000) (same).

itself conducted a detailed analysis to "ensure an accurate and careful categorization," and determined that employees should be uniformly treated as a non-exempt group. (*See* Sarkar Decl. Exh. A.)[7]  Chase conducted a comprehensive review that "captured an accurate" picture of the employees' "work and responsibilities."  (*Id.*)  Chase's argument that the job classifications relied on by Plaintiffs are "so broad and superficial that they cease to shed any light on what duties these employees actually perform," ignores that Chase itself concluded that these employees are appropriately treated the same based on their similar job duties.  (*See* Def.'s Br. 24.)  The descriptive tasks opposed by Chase as superficial—troubleshooting, installation, and problem resolution—are the primary duties specifically created and relied on by Chase in its reclassification investigation, and are a proper basis for finding sufficient similarity for certification.  (*See* Sakar Decl., Exh. A.)

Second, courts do in fact routinely grant conditional certification to proposed collective actions in misclassification cases.[8]  Contrary to the minority view espoused in the district court

---

[7]     The only case Chase cites involving reclassification, *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003), is inapposite.  First, the court in *Mike* could not rely on the reclassification as a "common thread" because the named plaintiff "disavowed" the job description relevant to the reclassification.  *Id.* at 221.  Without this job description, the court was left with no basis aside from individual inquiries to determine if each potential plaintiff was similarly situated to the named plaintiff.  *See Marcus v. Am. Contract Bridge League*, 254 F.R.D. 44, 48 (D. Conn. 2008) (refusing to rely on *Mike* because plaintiff disavowed job description); *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 621 (D. Conn. 2007) (same).  The current case is different because Chase itself has provided a common thread—its comprehensive analyses of employee responsibilities—for this Court to rely on to determine that the potential collective action members are similarly situated.  The Plaintiffs here do not contest that Chase's comprehensive analyses provide an accurate description of their responsibilities.  Second, there is no indication that the reclassification in *Mike* rises to the level of the deliberate and comprehensive determination of employee responsibilities made by Chase in this case.  *See Mike*, 274 F. Supp. 2d at 219, 221.

[8]     *See e.g.*, *Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929 (S.D.N.Y. Oct. 2, 2007); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006); *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *8 (S.D.N.Y. Oct. 5, 2006); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 28, 2006);

opinions cited by Chase, most courts hold that the inquiry on a motion for conditional

certification may be based on an employer's classification decision and should not involve

examination of the underlying merits, even where the court might eventually make more

individualized exemption determinations.  If Chase were correct that an individualized inquiry is

necessary whenever an administrative or computer exemption might apply, then no case

potentially implicating these exemptions would ever be certified.  This is not the law.  For

instance, the Eleventh Circuit in *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir.

2008), emphasized the fact that "Family Dollar applied the executive exemption across-the-board

to every store manager—no matter the size, region, or sales volume of the store."  *Id.* at 1263.

Several other courts have articulated the rationale that a broad employer classification

may later be relied on by the courts for certification purposes.  For instance, the court in *Delgado*

*v. Ortho-McNeil, Inc.*, No. 07 Civ. 263, 2007 WL 2847238 (C.D. Cal. Aug. 7, 2007) noted that

defendants found "sufficient similarity" in the job duties of the employees to treat them as one

"homogenous group for purposes of the FLSA" and it would be "somewhat disingenuous" to

argue that they should be permitted to treat all employees as one group, but that the court "can

only determine the validity of that classification by looking to the specific job duties of each

individual sales representative."  *Id.* at *2; *see also Nerland v. Caribou Coffee Co.*, 564 F. Supp.

2d 1010, 1024 (D. Minn. 2007) (finding it "disingenuous" for employer to collectively decide

that employees are exempt executives while "claiming plaintiffs cannot proceed collectively to

challenge the exemption").  Establishing substantial similarities between the employees in this

case is even easier than in cases based solely on general employee misclassification because here

---

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005); *Richards v. Computer
Scis. Corp.*, No. 3:03 CV 630, 2004 WL 3517039 (D. Conn. Sept. 28, 2004); *Jacobsen v. Stop &
Shop Supermarket Co.,* No. 02 Civ. 5915, 2008 WL 21136308 (S.D.N.Y. May 15, 2003).

Chase undertook an extensive and accurate investigation into underlying job duties and

determined that the relevant employees were properly treated as a uniform group.

    **D.**    **Plaintiffs Are Similarly Situated With Respect to Their Job Duties and How They Were Treated By Chase.**

        **1.**    **Minor Variations in Job Duties Are Irrelevant at this Initial Notice Stage.**

Plaintiffs and potential collective action members share the same primary job duties—

installing, maintaining, or supporting computer software and hardware.[9]  Chase's declarations

underscore this reality, with the thirteen declarants consistently testifying that they engage in that

work for Chase.  Specifically, all thirteen declarants perform aspects of computer system

support:  moving data ("data migration" and "capacity management"),[10] maintaining file and

print systems,[11] monitoring system status,[12] installing software (including patching),[13]

---

[9] Despite Chase's allegations, Plaintiffs' declarations are more than sufficient to support the lenient requirements of conditional certification.  First, hearsay requirements are not applicable at this early notice stage.  Declarations based on personal knowledge and beliefs regarding other employees' duties routinely support conditional certification.  *See, e.g., Fasanelli v. Heartland Brewery*, 516 F. Supp. 317, 321 (S.D.N.Y. 2007) (rejecting arguments that declarations containing "inadmissible hearsay, speculation, personal beliefs and conclusions" may not support certification).  This rule is sensible because without the benefit of complete discovery, Plaintiffs have limited information to present their case.  As noted, Plaintiffs have not received any discovery on the vast majority of potential collective action members.  Second, Chase is incorrect that Plaintiffs' declarations and depositions are contradictory.  For instance, Chase suggests that Clarke's statement "everyday could be different" demonstrates discretion or daily variation in responsibilities.  (Def.'s Br. 16.)  In context however, Clarke was describing that he would "stick to a certain procedure" but "if an emergency comes up" a manager might direct him to address it immediately. (Supplemental Declaration of Adam T. Klein ("Klein Supp. Decl.") Exh. J., Clarke Dep. 345-48.)  This sort of variation occurs in any employment context.  Finally, as described below minor variations in daily responsibilities are irrelevant at this initial certification stage.

[10]     *See* Declarations of Jack Szulc ¶ 4, Rick Schalles ¶ 6, Brian Priskey ¶ 11, Brian McRae ¶ 4, John DeJesus ¶ 9, Greg Crawford ¶ 3, 14, 22 (describing Greg Crawford, David Lowry, Jose Avila, David Lowry, Melvin Shaw, and Peter MacDonald), Melvin Shaw ¶ 14 (describing Greg Crawford).

[11]     *See* Declarations of Melvin Shaw ¶ 5, 27, 34; Brian McRae ¶ 3; David Lowry ¶ 20; John DeJesus ¶ 17.

configuring and running backup software,[14] and troubleshooting.[15]  Importantly, most declarants

perform a combination of these duties.  Furthermore, the declarants confirm that potential

collective action members are subject to the authority of Engineering,[16] respond to the needs of

the lines of business,[17] and perform much of their work in response to trouble tickets.[18]

Chase attempts to distract from these shared duties, and its own careful categorization, by

emphasizing purported differences in employees' daily activities, most of which are immaterial

to the issue before the Court of whether these employees were misclassified—as Chase itself

concluded in a non-litigation context.  (Def.'s Br. 18.)  Chase's argument misses the mark for

three reasons.  First, at the notice stage, Plaintiffs need only show that their positions are

"similar, not identical, to the positions held by the putative class members."  *Francis v. A&E

Stores, Inc.*, No. 06 Civ. 1638, 2008 WL 4619858, at *3 (S.D.N.Y. Oct. 16, 2008) (quoting

*Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5,

2006)).  For instance, Chase goes so far as to suggest that it is significant that Plaintiffs worked

on different software platforms.  (Def.'s Br. 7.)  These sorts of minor differences are uniformly

rejected as irrelevant during the notice stage.  *See, e.g., Lynch*, 491 F. Supp. 2d at 369 ("[F]actual

---

[12]     *See* Declarations of Melvin Shaw ¶ 8 (describing David Lowry); Melvin Shaw ¶ 35; Brian Priskey ¶ 15; Brian McRae ¶ 14, 16; Brian McRae ¶ 21 (describing Edmond Wong and John Cheng), ¶ 22 (describing Michael Attard), & ¶23 (describing Damian Dass), Kevin Lunz ¶ 5, 6, & 16, David Lowry ¶¶ 6, 7, John DeJesus ¶ 19, Deana Breitieser ¶ 7.

[13]     *See* Declarations of Melvin Shaw ¶ 9 (describing Peter MacDonald), ¶ 10 (describing Rick Schalles), ¶ 13 (describing Saurab Bhatia), Melvin Shaw ¶ 24, Brian McRae ¶ 15, Rick Schalles ¶ 2, Kevin Lunz ¶ 10, John DeJesus ¶ 18, Greg Crawford ¶3 2, Joseph Belluardo ¶ 7, Mark Abney ¶ 16.

[14]     *See* Declarations of Brian Priskey ¶ 7, Melvin Shaw ¶ 11 (describing Brian Priskey), ¶ 12 (describing Jose Avila), John DeJesus ¶ 22, Greg Crawford ¶ 31, Mark Abney ¶ 1, 10, 11.

[15]     *See* Declarations of Melvin Shaw ¶ 25, Brian McRae ¶ 10, Greg Crawford ¶ 7.

[16]     *See* Declarations of Jack Szulc ¶ 10, 11, Brian McRae ¶ 22, Greg Crawford ¶ 33, Melvin Shaw ¶ 30, Brian Priskey ¶ 16, Greg Crawford ¶ 13.

[17]     *See* Declarations of Melvin Shaw ¶ 18, 19, Darren Phillips ¶ 4, John DeJesus ¶ 10, Greg Crawford ¶ 24.

[18]     *See* Declarations of Shaw ¶ 22, Schalles ¶ 8, 11, Brian Priskey ¶ 17, Brian McRae ¶ 17, John DeJesus ¶ 20, Greg Crawford ¶ 12, Deana Breitieser ¶ 5, 6, Joseph Belluardo ¶ 5.

variances that may exist between the plaintiff and the putative class do not defeat conditional

class certification."); *Richards v. Computer Scis. Corp.*, No. 3:03 Civ. 640, 2004 WL 3517039,

at *4 (D. Conn. Sept. 28, 2004) (comparing variations in responsibilities of computer specialists

as equivalent to difference for cleaners of working on carpet versus tile versus polished stone

floors and concluding that "the nature of the clients served and the specific applications used by

each [employee] are irrelevant").  Likewise, Chase makes much of the fact that potential class

members work in different managerial units throughout its IT organization.  This virtually

ubiquitous feature of corporate organizational structure does not diminish the appropriateness of

certification.

Second, individual differences between plaintiffs do not defeat similarities based on a

common practice.  *See Davis v. Abercrombie & Fitch Co.*, No. 08 Civ. 1859, 2008 WL 4702840,

at *11 (S.D.N.Y. Oct. 23, 2008) (common claims of FLSA violation sufficient regardless of

arguments that court will be required to make individualized determinations regarding

administrative exemption); *Iglesias-Mendoza*, 239 F.R.D. at 368 ("[F]actual variations . . . do not

undercut plaintiffs' allegations of common wage and overtime practices that violate the FLSA");

*Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 390 (W.D.N.Y. 2005) (that plaintiffs had "different

duties and performed different types of work is not particularly relevant to whether they are

similarly situated . . . What *is* important is that these employees were allegedly subject to a

common practice or scheme . . . in violation of the FLSA.").  Any variations in responsibilities

do not defeat Chase's own "accurate and careful categorization" that these positions should be

grouped together, nor its considered decision not to pay back wages to the reclassified workers.

(Sarkar Decl. Exh. A.)

Third, the types of distinctions Chase is asking the Court to draw are not appropriately

considered at this early stage, before the completion of discovery.  *See Marcus v. Am. Contract*

14

*Bridge League*, 254 F.R.D. 44, 48 (D. Conn. 2008) (stating it "could very well be true" that the "plaintiffs are asking the court to certify a class made up of individuals with different jobs and responsibilities. . . . However, the exact nature and scope of these different positions are unknown at this point, but they should be revealed by the end of discovery."); *Morden v. T-Mobile USA, Inc.*, No. 05 Civ. 2112, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006) ("[D]efendant has argued extensively about the individual differences between the proposed plaintiffs, and the specific factual determinations that the Court will need to make with respect to each plaintiff. . . . [T]hese arguments demonstrate a fundamental misunderstanding of the nature of the proceedings at this stage of litigation.").[19]  After proposed collective action members have been informed of the action, and the parties have conducted complete discovery, the Court can make informed choices about the proper scope of the trial.

> **2.     Plaintiffs' Claims Are United by Chase's Conclusion that They Were Misclassified Given Their Job Duties, Coupled With Chase's Uniform Decision to Deny Them Back Pay Despite Their Misclassification.**

Apparently recognizing that this Court, and a long line of cases, grant initial stage notice where, as here, the proposed collective action members are similarly affected under the same policy or practice, *see, e.g., Iglesias-Mendoza*, 239 F.R.D., Chase attempts to distinguish those many precedents.  Its attempts to do so are unconvincing.  For example, Chase argues only a single exemption was at issue in *Iglesias-Mendoza*, and that no exemption was at issue in *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1988) or *Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 WL 2600667 (S.D.N.Y. June 30, 2008).  But, as in any area of the law, Plaintiffs are not required to establish that the facts of their case are identical to the facts of the cases on which they rely.  These precedents articulate the fundamental principal of general

---

[19]     Tellingly, certain of Chase's citations are actually to cases determining the merits on summary judgment.  *See* (Def.'s Br. 7) (citing *Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1319 (S.D. Fla. 2005).)

applicability: Where there is a common policy that violated the law, the "similarly situated" requirement for initial stage notice is satisfied, and minor variations in job duties are not relevant. In many respects, this action is a much easier case than the determinations made in these precedents. Rather than investigating whether there is a sufficient common thread among employees across a range of positions, the Court can look to Chase's own investigation and classification.

To the extent that Chase contends these precedents are not applicable because they involve "duck feeders" and other lower-wage workers, its contention is contrary to the law. It is not the case that only low-wage employees are entitled to the broad protections of the FLSA. *See, e.g., Francis*, 2008 WL 4619858 (conditionally certifying store managers); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) (approving notice for "Client Service Managers"); *Richards*, 2004 WL 3517039 (approving notice for computer "Customer Support Analysts"); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261 (D. Conn. 2002) (approving notice for computer "Systems Engineers"). The "highly compensated" exemption does not apply to any workers making less than $100,000. *See* 29 C.F.R. § 779.101.

### E. Chase's Own Investigation of Job Duties and Reclassification Decision, Coupled With Its Uniform Failure to Pay Back Wages, Established That Members of the Proposed Collective Action Are Similarly Situated.

Chase's comprehensive review of the job duties of proposed collective action members and determination that employees were misclassified, coupled with its failure to pay those employees back wages, unites the claims of all class members.[20] Understandably, Chase would

---

[20] Chase is incorrect that Clarke cannot be a named representative because his employment ended before January 1, 2008. (Def.'s Br. 16-17 n.5.) The potential collective action includes those employees who were formerly classified as exempt, and were reclassified as non-exempt, but were not paid the back overtime wages to which they are entitled, at any time in the three years preceding the filing of the Complaint—that is, at any time from March 7, 2005 forward. (*See* Class Action Complaint ¶ 24, 45.) Plaintiffs are aware of at least two reclassifications—one

16

like the Court not to consider such evidence since it is fatal to its position.  Such evidence,

however, is appropriately considered in this case.

Chase's comprehensive review of the job responsibilities of proposed collective action

members and its conclusion that they were misclassified was not a subsequent remedial measure.

The payment of overtime to those workers prospectively was the subsequent remedial measure.[21]

Courts differentiate between post-event investigations and the remedy itself.  "The fact that the

analysis may often result in remedial measures being taken . . . does not mean that evidence of

the analysis may not be admitted."  *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 430 (5th

Cir. 2006) (discussing post-accident investigations and citing other courts applying the same

rule) (citations omitted); *see also Prentiss & Carlisle Co. v. Koehring-Waterous Div. of

Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992) (post-event reports, with remedial measures

redacted, are not subsequent remedial measures); *Rocky Mountain Helicopters v. Bell

Helicopters Textron*, 805 F.2d 907, 918 (10th Cir. 1986) (holding Rule 407 only bars the actual

remedial measure, not initial steps toward ascertaining whether any measure is necessary).  Post-

event investigations do not make the event "less likely to occur," as required by the rule; only the

actual implemented changes have this effect.  *Brazos River Auth.*, 469 F.3d at 430 n.10 (citing 2

WEINSTEIN, ET AL., FEDERAL EVIDENCE § 407.06[1] (2d ed. 1997) ("It is only if changes are

---

in August 2005 in which Clarke was reclassified from exempt to nonexempt and one in January
2008 in which Sakar was reclassified from exempt to nonexempt.  Both Plaintiffs thus fall
squarely within the defined collective action group, and can represent all potential collective
action members reclassified within the three year period.  Chase is also wrong in claiming that
any overtime claims of potential collective action members who were reclassified in August of
2005 are time barred.  (Def.'s Br. 9 n. 2).  Plaintiff Clarke is a collective action member
reclassified in August 2005, who timely filed his consent to join within three years of that
reclassification, on March 7, 2005.  And, as described below and in our opening brief, the statute
of limitations on all claims of potential collective action members should be equitably tolled
from March 7, 2008 until the end of the opt-in period.

[21]     Significantly, Chase failed to take full remedial measures, since it failed to pay back pay
even though it determined that these workers were misclassified.

implemented as a result of the tests that the goal [of 407] is furthered; and even then, it is only

evidence of those changes that is precluded by the rule.")); *see also Westmoreland v. CBS, Inc.*,

601 F. Supp. 66, 67-68 (S.D.N.Y. 1984) (rejecting policy arguments for shielding investigative

reports).  In this case, Chase "identified IT jobs," "review[ed] the functional content of certain IT

jobs," and "captured an accurate content of work and responsibilities for review and analysis."

(Sarkar Decl. Exh. A.)   This is exactly the sort of investigative report that Rule 407 does not

exclude.

In addition, Rule 407 only excludes subsequent measures when used to prove negligence

or culpable conduct, but it does not exclude evidence of "subsequent measures when offered for

another purpose."  FED. R. EVID. 407.  For this Motion, Plaintiffs are not offering the

reclassification determination to prove culpable conduct.  Rather, the investigative conclusions

reached by Chase establish that the potential collective action members are similarly situated to

Plaintiffs.  Upon a comprehensive investigation of employees' responsibilities, Chase itself

concluded that these employees were properly grouped together based on work responsibilities.

### F.    Plaintiffs Are Not Required to Establish That Other Employees Seek to Join the Litigation.

Courts within the Second Circuit have rejected the contention that a plaintiff must

demonstrate other employees' desire to participate in a collective action.  *See Amendola v.*

*Bristol-Myers Squibb Co.,* 558 F. Supp. 2d 459, 466 (S.D.N.Y. 2008) ("FLSA plaintiffs are not

required to show that putative members of the collective action are interested in the lawsuit in

order to obtain authorization for notice of the collective action to be sent to potential plaintiffs.");

*Neary,* 517 F. Supp. 2d at 622 (D. Conn. 2007) ("As to defendant's claim that plaintiff has not

identified other potential class members who would want to participate in this action, such

identification, at this preliminary stage, is not required in the Second Circuit.").  Other courts

also agree that identifying interested parties is unnecessary.  *See, e.g., Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007); *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 690 n.1 (W.D. Mo. 2007); *Davis*, 303 F. Supp. 2d at 1277.

The policy rationale behind refusing to require prior identification is sound.  First, identification of potential class members is a primary purpose of authorizing notice; any other rule would require plaintiffs to have the very information they seek with the motion.  *See Neary*, 517 F. Supp. 2d at 622.  Moreover, it is a mistake to assume that all potential collective action members are even aware of the litigation and their accompanying FLSA rights.  Second, especially during difficult economic periods, employees might be hesitant to express their desires to join a lawsuit for many reasons, including misinformation and fear of retaliation.  *See Neary,* 517 F. Supp. 2d at 622-23 & n.7 (noting reasons for refraining from expressing interest in suits); *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 525 (N.D. Iowa 2003) (listing cases recognizing hesitance to join class actions because of fear of employer reprisal).  Third, courts have recognized that such a requirement would conflict with the Supreme Court's direction that courts are to construe the FLSA broadly and liberally.  *See Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (citing *Hoffmann-La Roche*, 493 U.S. at 170).

**G.    The Notice Plaintiffs Have Proposed Is Timely, Accurate, and Informative.**

In *Hoffmann,* the Supreme Court instructed that notice of a claim under the FLSA's opt in procedures should be "accurate, timely and informative."  *Hoffmann-La Roche*, 493 U.S. at 171-72.  The form of notice Plaintiffs have proposed meets that standard.  Chase has not identified any errors or deficiencies in the notice.  Chase's suggestion that the parties meet and confer about the form of notice would delay the mailing of the notice, which would prejudice class members, unless the Court tolls the statute of limitations on their FLSA claims.

19

**H.    The Court Should Toll the Statute of Limitations on FLSA Claims Until the End of the Opt In Deadline.**

In this action, Chase asked for the unusual right to have its summary judgment motion decided before Plaintiffs' motion for *Hoffmann* notice was decided.  Magistrate Judge Freeman granted that scheduling request, but ruled that in order to protect that scheduling ruling from prejudicing proposed collective action members, the statute of limitations of FLSA claims would be tolled until the Court decides Chase's summary judgment motion.  Magistrate Judge Freeman asked the parties to memorialize that ruling in a stipulation and order, which they did.  (Shaulson Decl. Exh. C.)

That stipulation and order expressly states "nothing contained in this stipulation shall constitute a waiver of Plaintiffs' . . . legal positions, rights, and remedies . . ." (*Id*. ¶ 3.).

If this Court grants Plaintiffs' *Hoffmann* notice motion, it should order tolling of the statute of limitations on the FLSA claims of proposed collective action members from March 7, 2005 through the date the Court sets as the end of the opt in period, for the reasons set forth in Plaintiffs' opening brief.  Such an order will prevent prejudice to proposed collective action members.  Otherwise, those collective action members' claims will be shortened due to no fault of their own.[22]

Dated: June 1, 2009                         Respectfully submitted,

                                            **OUTTEN & GOLDEN LLP**


                                            By: /s/ Adam T. Klein
                                                  Adam T. Klein

---

[22] Chase has prevented Plaintiffs' counsel from notifying potential collective action members of their legal rights.  By the end of June 2008, Chase had denied repeated requests for a list of class members.  (*See* Klein Supp. Decl., ¶¶ 2-5, Exh. I.)  A defendant's refusal to provide this information is a ground for equitable tolling.  *See, e.g., Baldozier v. Am. Fam. Mutual Ins.*, 375 F.Supp. 2d 1089, 1092-1093 (D. Colo. 2005); *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 543 (N.D. Cal. 2007).

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**ALTSHULER BERZON LLP**
James M. Finberg (admitted *pro hac vice*)
Eve H. Cervantez (admitted *pro hac vice*)
Peter E. Leckman (CA Bar # 235721)
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151

**LIEFF, CABRASER, HEIMANN
  & BERNSTEIN, LLP**
Kelly M. Dermody (admitted *pro hac vice*)
Jahan C. Sagafi (admitted *pro hac vice*)
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000