Law Offices
**MORGAN, LEWIS & BOCKIUS LLP**
Sam S. Shaulson (SS 0460)
Debra Morway (DM 2629)
101 Park Avenue
New York, New York 10178
(212) 309-6000 (Telephone)
(212) 309-6001 (Fax)
Attorneys for Defendant

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**ANDREW CLARKE and TAPAS SARKAR,**
      *Plaintiffs*,

versus

**JPMORGAN CHASE & CO.,**
      *Defendant.*

**Civil Action No.**

**08-CV-2400 (CM-DCF)**

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION TO DISMISS THE CLAIMS OF PLAINTIFF CLARKE**

DB1/63247387

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................................1

II. ARGUMENT ..................................................................................................................................1

    A. Clarke's New Jersey Claim Is Time-Barred..................................................................1

    B. Clarke's FLSA Claim Is Also Time-Barred...................................................................3

    C. Clarke Cannot Avoid Summary Judgment By Diverting Attention From His Own Admissions Relating To His Job. ....................................................................................4

    D. Clarke Is Exempt Under the Administrative Exemption. ...............................................7

        1. Clarke Exercised Discretion and Independent Judgment ................................7

        2. Clarke's Work Related To Chase's General Business Operations...............................11

    E. Clarke Was Exempt Under The Computer Employee Exemption ...........................................13

III. CONCLUSION..............................................................................................................................15

## **TABLE OF AUTHORITIES**

Abel v. Dep't of Corr. of the State of Kansas,
No. 93-4070, 1995 WL 106535 (D. Kan. Jan 12, 1995) ...............................................................5

Bagwell v. Fla. Broadband, LLC,
385 F. Supp. 2d 1316 (S.D.Fla. 2005) ........................................................................................15

Beckman v. U.S. Postal Serv.,
79 F. Supp. 3d 394 (S.D.N.Y. 2000) ............................................................................................2

Berman v. Parco,
986 F. Supp. 195 (S.D.N.Y. 1997) ...............................................................................................2

Bobadilla v. MDRC,
Civ. A. No. 03-9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) .........................................15

Brazos River Auth. v. GE Ionics, Inc.,
469 F.3d 416 (5th Cir. 2006) ........................................................................................................5

Chao v. Vidtape, Inc.,
196 F. Supp. 2d 281 (E.D.N.Y. 2002) .........................................................................................3

Gelin v. Geithner,
No. 06-cv-10176, 2009 WL 804144 (S.D.N.Y. March 26, 2009) ...............................................9

Malloy v. Richard Fleischman & Assoc.,
No. 09 Civ. 322 (CM), 2009 WL 1585979 (S.D.N.Y. June 3, 2009) ........................................10

Mike v. Safeco,
274 F. Supp. 2d 216 (D. Conn. 2003) ..........................................................................................5

Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.
Coopers & Lybrand, LLP, 322 F.3d 147 (2d Cir. 2003) ..............................................................2

Soo Line R.R. Co. v. St. Louis S.W. Ry. Co.,
125 F.3d 481 (7th Cir. 1997) ........................................................................................................2

Trans World Airlines, Inc. v. Thurston ,
469 U.S. 111 (1985) ......................................................................................................................3

Vinole v. Countrywide Home Loans, Inc.,
-- F.3d --, 2009 WL 1926444 (9th Cir. July 7, 2009) ..................................................................6

Yang v. ABCL Corp.,
427 F. Supp. 2d 327 (S.D.N.Y. 2005) .........................................................................................3

In re Wells Fargo Home Mortgage Overtime Pay Litig.,
-- F.3d --, 2009 WL 1927711 (9th Cir. July 7, 2009) ..................................................................6

# STATUTES and RULES

29 C.F.R. § 541.100 ...................................................................................................................... 11

29 C.F.R. § 541.200 ...................................................................................................................... 11

29 C.F.R. § 541.202 ........................................................................................................................ 9

29 C.F.R. §541.400(a) ................................................................................................................... 13

29 C.F.R. § 541.604(a) .................................................................................................................... 4

29 U.S.C. § 255(a) .......................................................................................................................... 3

Fed. R. Civ. P. 56(e) ................................................................................................................. 1, 11

Fed. R. Evid 407 ............................................................................................................................. 4

I.       **INTRODUCTION**

Recognizing that the only two claims he pled in this action – a New Jersey overtime claim and an FLSA overtime claim – are time-barred, Clarke now seeks to assert a new claim for the first time under New York law by arguing that he is a member of the New York class that Plaintiff Sarkar alone purports to represent. Clarke, however, is estopped from doing so under controlling Second Circuit authority because he alleged in his Complaint that he worked in New Jersey during the entire New York class period. As for his attempt to avoid the untimeliness of his FLSA claim, Clarke cannot extend the two-year statute of limitations to three years for a "willful" violation because it is undisputed that Chase committed no violation of the FLSA during the two-year period, let alone a "willful" one.

Even if Clarke's claims were not time-barred, nothing Clarke says in his opposition brief saves his claims from dismissal on the merits. Indeed, Clarke cannot avoid summary judgment by using the familiar tactic in overtime exemption cases of denigrating his job duties given his previous admissions. For example, having stated that he managed the file and print and disaster recovery infrastructure and provided third-level global support, he cannot defeat summary judgment by characterizing himself as a low-level troubleshooter. Likewise, having admitted that he was the most knowledgeable person regarding clustering, print load balancing, and capacity management and that Chase considered him a subject matter expert ("SME") in these areas, he cannot now claim that the "SME moniker" was just a "fancy sounding term" to make him "feel good." Clarke also cannot avoid summary judgment by making conclusory statements about being constrained by engineering guidelines when he offers no specific facts as required by Fed. R. Civ. P. 56(e) regarding what those alleged guidelines were and how they stripped all discretion from his job.

II.      **ARGUMENT**

   A.     **Clarke's New Jersey Claim Is Time-Barred.**

In response to Chase's argument (Opening Br. at 12), Clarke concedes that his New Jersey claim is time-barred and ought to be dismissed. (Clarke Opp. at 10 n. 4). In a desperate attempt to hold on to a

timely claim, Clarke asserts in a footnote for the first time that he has a New York overtime claim not because he pled a New York claim, but rather, because he "falls within 'The New York Rule 23 Class'" asserted by Plaintiff Sarkar. (Id.). But Clarke cannot assert a New York claim for two separate reasons.

First, under controlling Second Circuit authority, Clarke is estopped from raising a New York claim because he has "pled himself out" of the New York class by asserting in his Complaint that he worked in New Jersey during the entire six-year statutory period for the New York claim, including specifically the time period Clarke now claims in his footnote that he worked in New York – June 2003 to July 2004. (Compl. ¶9; Clarke Opp. at 10 n. 4); Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (finding judicial admissions in complaint bind party throughout course of proceedings; "plaintiff can plead himself out of court by alleging facts that show he has no claim"); Soo Line R.R. Co. v. St. Louis S.W. Ry. Co., 125 F.3d 481, 483 (7th Cir. 1997) (claim time-barred based on complaint allegations; "judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal of considered means possible").

Second, Clarke cannot assert a New York claim at the eleventh hour in a footnote in his opposition brief because it is well settled that a claim cannot be asserted or amended through an opposition to summary judgment and allowing the assertion of such a claim now would prejudice Chase. E.g., Beckman v. U.S. Postal Serv., 79 F. Supp. 3d 394, 407-08 (S.D.N.Y. 2000) ("because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled 'that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.'"); Berman v. Parco, 986 F. Supp. 195, 201 (S.D.N.Y. 1997). Indeed, the parties engaged in discovery for the specific purpose of preparing for summary judgment proceedings, discovery has been closed since March of 2009, and Chase litigated this matter based on the claims Clarke pled – focusing its discovery on Clarke's duties on the Windows Services Team. Clarke had an entirely different position prior to January of 2005

with job duties that are completely distinct from his job duties on the Windows Services Team. (Ex. A at 97, 106; Ex. K at 55, 78-79).[1]  Neither Clarke nor Chase has presented any evidence to the Court regarding these pre-January 2005 job duties. It would severely prejudice Chase to now have to litigate claims based on those duties, and it would also be highly inefficient for the Court to reopen discovery and summary judgment briefing to address a claim that Clarke concedes he did not plead.[2]

## B. Clarke's FLSA Claim Is Also Time-Barred.

In its Opening Brief, Chase demonstrated that Clarke's FLSA overtime claim also is time-barred because he was eligible for and received overtime during the entire two-year limitations period. (Opening Br. at 12). Clarke now admits that he was paid overtime during the two-year limitations period, but he argues instead that the two-year period should be extended to three years because Chase has not met its burden of showing that its conduct was not willful. (Clarke Opp. at 10). As an initial matter, Clarke cannot extend the two-year limitations period for a willful violation because it is undisputed that no violation of the FLSA occurred during that two-year period, let alone a willful one.[3]  In any event, it is Clarke's burden – not Chase's – to prove willfulness and he has presented no evidence that Chase committed a willful violation of the FLSA. 29 U.S.C. § 255(a); Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 (1985) (to

---

[1] Exhibits A-J, are attached to the Debra Morway Affidavit filed in connection with Chase's Opening Brief. Exhibits K-N are attached to the Morway Declaration filed in connection with this brief. SMF refers to Defendant's Statement of Material Facts Not In Dispute, and RSMF refers to Plaintiffs' response thereto.

[2] There is no doubt that choosing Clarke to represent the New Jersey class and Sarkar to represent the New York class was part of a deliberate strategy by Plaintiffs' experienced class-action lawyers. Plaintiffs did not plead a New York claim for Clarke because they do not want the Court to know about Clarke's testimony that the duties he performed in New York on the Desktop Team were entirely different than the duties he performed in New Jersey on the Windows Server Team. Indeed, such testimony would completely undermine their arguments that this case should proceed as a collective action. Having stuck to this strategy from the inception of this case and throughout discovery, Plaintiffs must live with their strategic choice now.

[3] The cases Clarke cites do not support his position that he can invoke the three-year statute of limitations because in both cases, during the two-year statutory period, the employer classified the employees as non-exempt but paid them no overtime. Yang v. ABCL Corp., 427 F. Supp. 2d 327, 337-38 (S.D.N.Y. 2005); Chao v. Vidtape, Inc., 196 F. Supp. 2d. 281, 295-96 (E.D.N.Y. 2002). Here, Clarke concedes that no FLSA violation occurred within the two-year limitations period. (Clarke Opp. Bf. at 10).

3

demonstrate "willfulness," it is plaintiff's burden to show that "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute," but if employer acts reasonably in determining its legal obligation under FLSA, its action cannot be deemed "willful.").

### C. Clarke Cannot Avoid Summary Judgment By Diverting Attention From His Own Admissions Relating To His Job.

Trying to avoid an analysis of his actual job duties, Clarke argues that Chase's reclassification in August of 2005 of hundreds of employees from overtime exempt to overtime eligible constitutes an admission that Clarke was, in fact, a non-exempt employee. Clarke's argument is baseless for three separate reasons.

First, Chase's reclassification is not an admission. The documents that Clarke cites provide that Chase converted employees holding thirteen different job titles as a conservative approach to avoid the costs of litigation in an environment in which plaintiff class-action lawyers were filing an increasing number of class and collective action overtime lawsuits. Chase was well within its rights to act conservatively in its reclassification efforts and to minimize its risk by treating employees who were exempt from overtime under the law as eligible for overtime. See 29 C.F.R. § 541.604(a) (an employer may provide an exempt employee with overtime pay without losing the exemption). Plaintiffs may not simply extrapolate a reclassification of hundreds of employees to minimize the risk of litigation into an admission by Chase that the particular duties Clarke performed day-to-day made him non-exempt. Indeed, the email Plaintiffs hang their hat on for this supposed admission says that troubleshooting, installation, and problem resolution are "often" – not always – considered to be non-exempt in nature.

Second, as Chase demonstrated in response to the same arguments made by Sarkar, evidence of Chase's reclassification is inadmissible under Federal Rule of Evidence 407 as a subsequent remedial measure. (Sarkar Reply at 3-4). Clarke argues that Chase admits he was misclassified – i.e., that Chase was culpable – because it "recognized" that it had misclassified employees as exempt and subsequently

4

reclassified them as overtime eligible. (Clarke Opp. at 10-12). This is a classic case of a party attempting to use a remedial measure to prove culpable conduct in violation of Rule 407. (Sarkar Reply at 3-4).

Knowing full well that his attempt to rely on Chase's reclassification runs afoul of Rule 407, Clarke half-heartedly argues that Chase's subsequent remedial measure was not its decision to reclassify, but instead, would have been the payment of money to the individuals who it reclassified. (Clarke Opp. at 11 n. 5). If this argument were correct, then that would mean where an automobile caused accidents, the subsequent remedial measure would not be the defendant's act of making safety improvements to the automobile, but instead, would be the defendant's payment of money to the accident victims. Of course, that is not the law. See, e.g., Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 428, 431 (5th Cir. 2006) (SRM is improvement to desalination product); Abel v. Dep't of Corr. of the State of Kansas, No. 93-4070, 1995 WL 106535, at *1 (D. Kan. Jan 12, 1995) (change in FLSA policy was SRM).

Clarke's attempt to circumvent Rule 407 by citing cases involving "post accident investigation reports" is equally baseless. (Clarke Opp. at 11 n. 5). Here, there has been no accident and no post accident report. More importantly, the cases Clarke cites admit post accident investigation reports for the sole purpose of proving that a product caused the plaintiff's injury, not for the purpose of proving that defendant was culpable. See, e.g., Brazos, 469 F.3d at 429-31. Here, in the FLSA context, there is no issue of causation and Clarke is clearly attempting to use Chase's reclassification to show culpability – i.e., that Chase misclassified him in violation of the FLSA. Furthermore, as explained above, nowhere in the document Clarke cites does it say that he was misclassified.

The third reason why Chase's reclassification is not an admission that Clarke was misclassified is because courts from around the country, including from within this Circuit, have concluded that an employer's decision to classify or reclassify a group of employees does not determine whether a particular employee was properly classified as overtime exempt under the law. (Sarkar Reply at 4-5); Mike v. Safeco,

274 F. Supp. 2d 216, 221 (D. Conn. 2003) (concluding that "merits of Mike's claim will turn upon evidence relating to Mike's day-to-day tasks, and not upon any Safeco company policy or decision" to reclassify employees from exempt to non-exempt).  Just days ago, the Ninth Circuit joined courts from around the country in reaching this same conclusion.  See In re Wells Fargo Home Mortgage Overtime Pay Litig., -- F.3d -- 2009 WL 1927711, at *4-5 (9th Cir. July 7, 2009) (reversing district court's certification of overtime class based on classification decision and concluding that uniform classification decision does not eliminate need to make factual determination as to how each class member performs his or her duties); Vinole v. Countrywide Home Loans, Inc., -- F.3d -- 2009 WL 1926444, *8-10 (9th Cir. July 7, 2009).[4]  The conclusion that a classification or reclassification decision does not remove the need for individualized analysis of each employee's actual job duties is even more compelling here where Plaintiffs themselves have admitted that job titles did not define their work, that purported class members affected by Chase's reclassification decision performed "entirely different" duties, and that the level of discretion exercised by purported class members varied depending on who the particular supervisor was.  (Ex. G at 269-71; Ex. M at 309-17; Ex. K at 96-97; Dkt. No. 62 ¶¶32-34; Dkt. No. 65 ¶¶12-24)**.**

Clarke's exemption status under the law is not determined by Chase's classification decisions; it is determined by Clarke's admissions about his own, actual job duties.  Indeed, Clarke has admitted that his duties all relate to the administration of Chase's computer network infrastructure and that he exercised discretion in carrying his duties (Opening Br. at 4, 15-20).  Clarke also admits the following:

- He managed the file and print and disaster recovery infrastructure.  (SMF ¶34; RSMF ¶34).
- He knew when to make an independent decision, when to check with others, and when decisions needed to be escalated, and his supervisor did not actively manage him each step of the way.  (SMF ¶20-22; RSMF ¶20-22).
- He engaged in brainstorming with co-workers to solve problems.  (SMF ¶15; RSMF ¶15).

---

[4] These cases are consistent with Judge Freeman's ruling, knowing of Chase's reclassification decisions and after consultation with the Court, to decide whether Plaintiffs are exempt on summary judgment before deciding Plaintiffs' motion to certify an FLSA collective action.

- There was not always a troubleshooting technique for every problem, and when there was no documentation that explained the answer, he would apply his skills and knowledge to <u>solve the problem</u>. (SMF ¶¶14, 19, 66; RSMF ¶¶14, 19, 66).

- In connection with the IB LOB disaster recovery project, his manager did not go to project meetings, and instead, his manager relied on him to attend the meetings. (SMF ¶25; RSMF ¶25).

- He identified underutilized servers and suggested their decommission. (SMF ¶ 26; RSMF ¶26).

- He trained his colleagues. (SMF ¶28; RSMF ¶28).

- He wrote documentation on Chase's backup and file and print disaster recovery infrastructure and the process for share synchronization of the NETAPP filers. (SMF ¶¶29, 31; RSMF ¶¶29, 31).

- He provided <u>third-level</u> global sever infrastructure support for 2500 users and maintained the global server infrastructure of over 1200 servers. (SMF ¶32-33, 37; RSMF ¶32-33, 37).

- He engaged in <u>computer programming</u> using Microsoft VBscript and NT Shell Scripting. (SMF ¶¶35, 51-54 RSMF ¶¶35, 51-54).[5]

- He engaged in challenging sophisticated work that was more technologically complex than the work performed by the helpdesk. (SMF ¶ 46; RSMF ¶46).

- He conducted testing in connection with special projects. (SMF ¶¶57, 59; RSMF ¶¶57, 59).

- He consulted with users in connection with special projects and worked with engineering to design the implementation of the projects to meet the users' specifications. (SMF ¶58, RSMF ¶58).

- He considered different options for data migration, discussed with the LOBs how they could remedy their capacity problems, and when there was more than one option, he discussed with the LOBs the pros and cons of each option. (SMF ¶¶62, 64; RSMF ¶¶62, 64).[6]

It is these admissions – from Clarke, under oath, in his own words, and in response to Chase's 56.1 Statement – that establish that his actual job duties qualified him as exempt.

### D.     Clarke Is Exempt Under the Administrative Exemption.[7]

#### 1.     Clarke Exercised Discretion and Independent Judgment.

In its Opening Brief, Chase demonstrated that Clarke exercised discretion and independent

---

[5] Scripting is computer programming. (Ex. G at 152-53).

[6] In some instances, Clarke denied Chase's Local Rule 56.1 without any factual cites (see RSMF ¶59), and in many other cases, he denied the statements but the citations he offers do not support the denials. (RSMF ¶¶ 8, 10, 12, 13, 17, 18, 23, 27, 30, 32, 38, 42, 44, 51, 53, 60-61, 63, 65). All such statements should be deemed admitted. (Sarkar Reply at 9 n. 5).

[7] The standard for establishing an overtime exemption is not a "plain and unmistakable" standard as Clarke would have this Court believe, but a "preponderance of the evidence" standard. (Sarkar Reply at 2 n. 1).

7

judgment in connection with the performance of his job duties. (Opening Br. at 15-20). In his Opposition Brief, Clarke does not dispute that all Chase has to show to meet this prong of the administrative exemption is that his work "included" some discretion. Clarke also does not dispute his sworn testimony – nor could he – that he exercised his own discretion in carrying out his duties, including specifically admitting that he made "independent decisions." (Ex. A at 299-301). Instead, Clarke advances a host of baseless arguments intended to downgrade his duties and use of judgment.

First, Clarke attempts to negate the discretion he exercised by contradicting his own sworn deposition testimony and contemporaneous documents he authored in carrying out his duties. The following chart highlights just some of these contradictions:

| **Prior Testimony And Documents** | **Post-Deposition Declaration And Brief** |
|---|---|
| Clarke states on his resume that he <u>managed</u> the file and print and disaster recovery infrastructure. (Ex. A at Dep. Ex. 31). Clarke also states on his resume that he provided <u>third-level</u> global server infrastructure support for 2500 users, when two levels of problem solvers could not solve the problem, and he testified his work was technologically complex. (<u>Id.</u> at 65, 249-51, 294, Dep. Ex. 31). | Clarke states in his declaration that he merely solved "simple problems" (Dkt. No. 96 ¶26), and he asserts in his brief that he engaged in low-level troubleshooting. (Clarke Opp. at 6). |
| Clarke testified that he made independent decisions, there was not always a solution for a problem, and when there was no documentation that contained an answer, he applied his skills to <u>decide</u> how to solve the problem. (Ex. A at 257-58, 284, 299-06). | Clarke states in his declaration that when he could not answer questions based on established protocol, he went directly to Engineering. (Dkt. No. 96 ¶24). |
| Clarke testified that he wrote <u>computer programs</u> or scripts in Microsoft VBscript and NT Shell Scripting so that manual work could be performed automatically. (Ex. A at 71, 337). | Clarke states in his declaration that at no time during his employment with Chase was he responsible for writing code, and then later contradicts that statement by saying he wrote "simple" scripts. (Dkt. No. 96 ¶¶ 10, 20). |
| Clarke testified that he engaged in <u>brainstorming</u> with his co-workers to solve problems. (Ex. A at 283-84). | Clarke states in his declaration that when there was no protocol he directed others to Engineering. (Dkt. No. 96 ¶24). |
| Clarke testified that his supervisor gave him flexibility to work <u>independently</u>. (Ex. A at 297). | In his brief, Clarke states that he was closely monitored by his supervisor. (Clarke Opp. at 7-8). |

Obviously, Clarke cannot contradict his deposition testimony and pre-litigation documents that he authored

8

to create a genuine issue of material fact for trial. (Sarkar Reply at 9).[8]

Second, Clarke argues that he does not meet any of the factors set forth in Section 541.202(b) for evaluating the use of discretion. (Clarke Opp. at 17). Of course, this provision itself is clear that these factors are non-exhaustive and the exercise of discretion should be determined by considering the "particular employment situation." 29 C.F.R. § 541.202. More significantly, in arguing that he does not meet any of the factors provided in this provision, Clarke omits from his list those factors that are most applicable. Clarke does not tell the Court that one of the factors is whether the employee provides "consultation or expert advice to management" and that he provided expert advice to management and LOBs on Q-Tree remediation and clustering. (Ex. A at 119-20, 135-37, 150-60, 168-71, 190-96, 201-05, 212, 215-16, 225-30, 290-92, Dep. Exs. 31, 34, 40-42, 47). He also does not tell the Court that another factor is whether the employee investigates and resolves matters of significance on behalf of management because, as he testified and stated on his resume, he thought independently within the technology field and investigated and resolved technically complex server issues that could cause significant loss to the business when others could not resolve those issues. (Id. at 65, 67-68, 135-37, 216-18, 249-51, 255, 266-67, 269-70, 280, 283-84, 294, 297, 303-06, 343, Dep. Exs. 31, 44 ). Whether an employee is involved in planning long or short-term business objectives is also a factor Clarke omits from his list because he testified, among other things, that he created Q-Tree remediation plans which plan for the future business objectives and needs of the LOBs and that he was involved in planning the Atlanta IB Project. (Id. at 119-20, 150-57, 190-96, 201-05, 212, 215-16, 225-30, 278-79, 290-92). Clarke also interpreted and implemented management policies and practices, and performed major assignments. (Id. at 119-20, 150-60, 168-71,190-96, 201-05, 212, 215-16,

---

[8] The declaration of Frank Kwan, like Clarke's own declaration, not only contradicts Clarke's earlier sworn deposition testimony, but also, no-where in that declaration does Kwan say that he has any personal knowledge of Clarke's job duties. See, e.g., Gelin v. Geithner, No. 06-cv-10176, 2009 WL 804144, at *23 (S.D.N.Y. March 26, 2009) (declaration from plaintiff's co-worker inadmissible because co-worker lacked personal knowledge).

9

225-30, 270, 278-79, 290-92, Dep. Exs. 31, 34; Ex. F).

Third, Clarke argues that the performance of his job required the use of experience and skill. (Clarke Opp. at 17-20). Chase does not dispute Clarke's technical skills and expertise. However, as Chase demonstrated in response to Sarkar's arguments, the use of skill and experience does not negate the use of discretion and judgment under controlling law. (Sarkar Reply at 10-11). This is especially true in this case because it is clear that Clarke drew upon his experience and skill to exercise his discretion to weigh options to make independent decisions that met the specific needs of unique LOBs. (See supra at 9-10).[9]

Fourth, Clarke argues that he does not exercise discretion because he consulted with others. As explained by Chase in its Opening Brief and in response to the same arguments made by Sarkar, however, both the DOL Regulations and the case law make clear that decisions made by exempt employees in the course of performing their duties need not even be final decisions and may be subject to review and consultation with others. (Opening Br. at 16; Sarkar Reply at 11-12). Despite the clear state of the law, Clarke repeatedly tries to downplay his exercise of discretion by stating that he merely "provided information about how to solve a problem" subject to approval by management or engineering. (Clarke Opp. at 3-4, 18). However, it is undisputed that Clarke made recommendations based on his own independent ideas regarding how to solve technologically complex server issues and how to plan for the future to ensure that LOB's had sufficient server capacity. (Ex. A at 119-20, 150-60, 168-71, 190-96, 201-05, 212, 215-16, 225-30, 290-92, 299-306, 343-44, Dep. Exs. 34, 40-42, 47; Ex. F).

That Clarke utilized the change control process before certain of his plans were implemented also does not mean that he did not exercise discretion and independent judgment. A change control is simply a mechanism for informing LOBs that a change is going to be made to the live computing environment so

---

[9] Malloy v. Richard Fleischman & Assoc., No. 09 Civ. 322 (CM), 2009 WL 1585979, *3 (S.D.N.Y. June 3, 2009), does not support Clarke's position that he was non-exempt because the court declined to consider the issue of whether the employees were exempt because of insufficient discovery.

10

work will not be interrupted. (Dkt. No. 65 ¶13; Dkt. No. 62 ¶15; Ex. L at 266-67; Ex. A at 215-16). No employee – no matter his or her position – can simply shut down the IB's servers, for example, without a control in place to ensure that it will not interrupt a multi-billion dollar deal. As Clarke and other members of his team admit, the change control process does not affect their use of discretion. (Dkt. No. 65 ¶13; Dkt. No. 62 ¶15; Ex. A at 215-16; Ex. L at 266-67).

Finally, Clarke argues that his work was dictated by guidelines and policies that came from "engineering." (Clarke Opp. at 16, 18). As demonstrated by Chase in response to the same arguments made by Sarkar, and as DOL regulations and controlling case law confirm, even if Clarke were bound by such "guidelines," following policies, manuals, or guidelines does not defeat the administrative exemption. (Sarkar Reply at 12-13). Even if it could defeat the exemption, Clarke has not identified a single policy or guideline that he was required to follow, let alone policies or guidelines that removed all discretion from his job. See Fed. R. Civ. P. 56(e); (Sarkar Reply at 13).[10] To the contrary, Clarke admitted under oath that the solution is not always in a manual, that he made independent decisions, and that he brainstormed with his colleagues to come up with solutions to problems. (Ex. A at 66-67, 183-84, 257-58, 284, 297-306). Likewise, Clarke's team members testified that: (1) they use their discretion to make decisions on critical server issues without going to their managers, (2) they do not use manuals in connection with their duties; (3) if any such manuals exist, they wrote the manuals; and/or (4) even if they use manuals, the solutions that they devise are not found in manuals. (Dkt. No. 62 ¶¶13, 19-20, 28, 31; Dkt. No. 65 ¶¶8, 11).[11]

## 2. Clarke's Work Related To Chase's General Business Operations.

In its Opening Brief, Chase demonstrated that Clarke was engaged in work directly related to

---

[10] Chase invited Clarke to identify any guidelines he used, and he did not do so. (Morway Decl. ¶5).

[11] Clarke's argument that he did not manage others (Clarke Opp. at 7) is a red-herring. Managing others is a requirement of the executive exemption, not the administrative exemption. 29 C.F.R. §§ 541.100, 541.200. Training other employees, however, which Clarke admits that he did (SMF ¶28; RSMF ¶28), is an exempt administrative function requiring the use of discretion. (Sarkar Reply at 7 n. 3).

11

Chase's general business operations because it is undisputed that he was involved in "servicing the business" rather than producing or selling Chase's products and because his main duties involved work in the functional area of computer network, internet, and database administration – work the DOL has cited as prototypical exempt administrative work. (Opening Br. at 14-15). In his effort to defeat summary judgment, Clarke resorts to twisting the law and mischaracterizing the facts.

Clarke tells the Court that the general business operations test "is met" if the employee engages in "running the business itself or determining the overall course or policies" and then he says he did not meet the test because "his mechanical work of installing and maintaining computers and computer systems" through troubleshooting did not constitute "running the business itself or determining the overall course or policies." (Clarke Opp. at 13-16). As Chase demonstrated in response to the same arguments made by Sarkar, while the general business operations test "is met" by a CEO who "runs the business" and "determines its policies," neither the governing DOL Regulation nor the controlling case law requires that an employee be engaged in "running the business" or "making policy." (Sarkar Reply at 14-15). Rather, the general business operations prong of the administrative exemption asks whether the employee performs a "staff" function rather than a "production" function. (Id.).

Clarke's argument that his "mechanical work" was "too low a level" to meet the "directly related" prong is supported by neither the governing Regulation nor the relevant case law, as the DOL and the courts have found that even low-level positions meet the directly related prong. (Sarkar Reply at 15).[12] In any event, Clarke's repeated attempt to paint himself as a low-level mechanic flies in the face of his own statements that he managed the file and print and disaster recovery infrastructure, that he served as the third-point of escalation to solve technically complex issues, that he coordinated special projects, and that he

---

[12] To the extent the opinion letters Clarke cites read into the general operations prong of the test a requirement that the work be "high level," those letters are inconsistent with the plain language of the Regulation and have been rejected by the Southern District. (Sarkar Reply at 15 n. 10).

12

wrote scripts to automate tasks.  (Sarkar Reply at 16).

### E. <u>Clarke Was Exempt Under The Computer Employee Exemption.</u>

In its Opening Brief, Chase demonstrated that Clarke was exempt under the computer professional exemption because he performed the following duties:

- Consulted with end users to determine hardware, software, and system functional specifications;
- Created Q-Tree, volume remediation, and cluster failover plans, which determined short-term and long-term needs of LOBs, options for resolution, and the impact of the plans on the LOBs;
- Helped design the architecture of the computer system by assessing how many and what storage devices should be used to store what data, and how to best to allocate volumes to different LOBs;
- Documented computer systems and programs by drafting manuals for use by his colleagues;
- Analyzed the computer network to create capacity management plans, diagnosed the root cause of major problems and weighed options for resolution, and devised failover plans to determine how to solve clustering problems;
- Tested computer systems in connection with IB's disaster recovery system and the Atlanta project; and
- Engaged in computer programming by creating scripts to modify the computer system.

(Opening Br. at 21-24).  In opposition to summary judgment, Clarke argues that because he was not a "computer programmer" or "software engineer," he cannot fit the exemption.  (Clarke Opp. at 20).  Of course, Clarke ignores the fact that he was a Distributed Computer <u>Engineer</u> and was a Microsoft Certified Systems Administrator and Microsoft Certified Professional.  (Ex. A at 29-32, 36-37, Ex. C; Ex. D ¶2).

Clarke also fails to address why his duties listed above do not fit squarely within the computer professional exemption.  (Opening Br. at 21-24).  Instead, Clarke's strategy once again is to denigrate his duties and characterize them in a way that is inconsistent with his testimony but fit within DOL opinion letters dealing with low-level, help desk personnel.  For example, Clarke cannot deny that computer programming falls squarely within the four corners of the exemption.  As a result, he claims that he only wrote "tiny" programming scripts.  (Clarke. Opp. at 6; Ex. G at 152; Ex. M at 153).  However, the computer exemption makes no distinction between short and long computer programs.  29 C.F.R. §541.400(a).

Clarke also claims that he did not engage in systems analysis because he did not "analyze complex

13

situations" or "make decisions regarding how computer networks should function." (Clarke Opp. at 22). Clarke's unsupported conclusion, however, is contrary to his deposition testimony. Clarke testified, that he "thought independently within the technology field" to perform technologically complex work, that he engaged in root cause analysis to analyze complex situations and come up with solutions that were not found in manuals, that he made decisions regarding how the infrastructure functioned to ensure that the network could properly write, save, and print data, that he developed solutions and made recommendations that enhanced the performance of the global infrastructure, and that he managed Chase's file and print and disaster recovery infrastructure. (Ex. A at 65, 119-20, 150-57, 190-96, 201-05, 212, 215-16, 225-30, 257-58, 262-63, 283-84, 290-92, 294, 299-306, 343-44, Dep. Ex. 31, 40-42, 47).

Clarke also cites to various DOL letters opining that duties such as the following do not qualify under the computer exemption: "manufacture or repair of computer hardware and related equipment," "lower-level work of using tools, instructions, and standardized approaches and experience," "install[ing]" and "tun[ing]" computer hardware and software, "changing software settings," "testing modems," "configuring desktops," "checking tables," "replacing parts," and "troubleshooting Windows problems…to predetermined specifications." (Clarke Opp. at 21-22). Then, attempting to take cover under these opinion letters, Clarke says his was a "troubleshooting" job and that his primary duty was "implementing guidelines and protocols." (Id. at 22). Clarke, however, has failed to identify one guideline or protocol that he allegedly implemented. Moreover, unlike the employees at issue in the 1999, 2001, and 2006 opinion letters, who spent the majority of their time troubleshooting, installing, configuring, and testing upgrades to computers and applications, Clarke did not spend the majority of his time on this work. In fact, he testified that he spent the most time (up to fifty-five percent) engaging in Q-Tree remediation. (Ex. A at 274-75). Q-Tree remediation involved consulting with end users to determine their functional needs, analyzing the computer system to create Q-Tree remediation plans, advising users of any risks associated with the plans,

14

and designing specific Q-Tree remediation plans to meet users' functional needs.  (Id. at 154-57, 190-96, 201-05, 212, 215-16, 225-30, 290-92, Dep. Exs. 40, 41, 42 & 47).  Clarke also managed the file and print and disaster recovery infrastructure; consulted with end users to determine hardware, software, and system functional specifications; engaged in the design of the infrastructure through his Q-Tree remediation work and cluster failover plans, which determined short-term and long-tem needs of LOBs and the impact of those plans on the LOBs; documented computer systems and programs; developed solutions and made recommendations that enhanced the performance of the global infrastructure; tested computer systems; performed computer programming; and performed these duties as a Certified Microsoft Professional.  (Id. at 29-32, 36-37, 65, 119-20, 135-37, 150-60, 168-71, 190-96, 201-05, 212, 215-16, 225-30, 249-51, 255, 262-63, 269-70, 278-280, 283-84, 290-91, 294, 299-306, 329-31, 337, 343-44, Dep. Ex. 31, 34, 40-42, 47, 50; Ex. F; Ex. K at 292).  As demonstrated in Bobadilla v. MDRC, Civ. A. No. 03-9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005), and in Bagwell v. Fla. Broadband, LLC, 385 F. Supp. 2d 1316, 1327 (S.D. Fla. 2005), these are all exempt functions under the computer employee exemption.  As this Court has held, Clarke should not be able to downplay his job duties to remove himself from the coverage of the computer employee exemption.  Bobadilla, 2005 WL 2044938 at *5.

## III.   CONCLUSION

For the reasons set forth above and in Chase's Opening Brief, Clarke's claims are time-barred. Alternatively, to the extent he has a timely FLSA claim for a five-month period, he was exempt under the administrative, computer employee, and/or the combination exemption.

| Dated:  July 17, 2009 | Respectfully submitted, |
|---|---|
| | By:   /s/ Sam S. Shaulson |
| | Sam S. Shaulson (SS 0460) |
| | MORGAN, LEWIS & BOCKIUS LLP |
| | 101 Park Avenue |
| | New York, New York  10178 |
| | (212) 309-6000 |